## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY BARTKO,

    **Plaintiff,**

    **v.**

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

    **Defendants.**

Civil Action No. 13-1135 (JEB)

## MEMORANDUM OPINION

Plaintiff Gregory Bartko is currently serving the fourth year of a 23-year prison term for conspiracy, mail fraud, and selling unregistered securities.  Driven by his belief that the Department of Justice – and, in particular, Clay Wheeler, the Assistant U.S. Attorney who secured his 2010 conviction – withheld evidence crucial to his defense and engaged in a "pattern of tainted prosecutions," Bartko sent Freedom of Information Act requests to a coterie of federal agencies asking for, *inter alia*, records of investigations or complaints against Wheeler, as well as documents that might concern Bartko and others who were involved in his case.

Different agencies and their components responded in different ways.  The two agencies that now move for summary judgment – DOJ's Office of Professional Responsibility and the Federal Bureau of Investigation – released some documents, withheld some in whole or in part, and issued a so-called "<u>Glomar</u> response" refusing to confirm or deny the existence of others.  Bartko then brought this *pro se* suit against multiple governmental entities, and a series of motions for summary judgment has now been filed.  This Opinion addresses only the Cross-Motions filed by OPR, the FBI, and Bartko.  In their Motion, OPR and the FBI maintain that

privacy concerns relating to AUSA Wheeler and others justify Defendants' refusal to produce many of the records Bartko seeks; in addition, they contend that other records are protected because they are related either to grand-jury proceedings or to ongoing criminal investigations. Agreeing with some of those arguments but finding most wanting, the Court will grant in part and deny in part the Cross-Motions for Summary Judgment.

## I.    Background

Gregory Bartko was a successful securities lawyer, investment banker, and broker. So successful, in fact, that the leaders of several North Carolina private-equity funds asked him to organize a scheme that would secure money from investors. See United States v. Bartko, 728 F.3d 327, 333 (4th Cir. 2013). For nearly two years beginning in January 2004, Bartko worked with at least three others to solicit such investments – fraudulently, it turns out – right up until the SEC got involved. Eventually convicted of six counts of fraud and other securities violations, Bartko received a 272-month sentence in 2010. Id. at 334.

Between 2012 and 2013, seeking to gain access to documents that would prove his innocence – or, at the very least, demonstrate prosecutorial misconduct – Bartko submitted FOIA requests to no fewer than seven federal agencies and subagencies. At issue in this Opinion, however, are inquiries he made to just two agencies: the Federal Bureau of Investigation, which Bartko expected to possess records relating to certain witnesses and others involved in his prosecution; and the Department of Justice's Office of Professional Responsibility, which Bartko thought might have records of its own investigations into allegations of AUSA Wheeler's prosecutorial misconduct.

The specifics of the FOIA requests were unremarkable. From the FBI, Bartko sought records regarding himself, three of his co-conspirators and their corporate alter egos, and one

other witness.  See Mot., Att. 2 (Declaration of David Hardy), Exh. A, ¶ 5.  Of OPR, he asked

only a copy of the agency's operating regulations and all records pertaining to former AUSA

Wheeler.  See  Mot., Att. 1 (Declaration of Ginae Barnett), ¶¶ 6-8.

The FBI's response was swift, if somewhat glib.  With regard to Bartko and Wesley

Covington – a witness who was deceased by the time of the request – the agency released some

eight hundred-plus documents in whole or in part, and it withheld more than three hundred in

full.  To justify those withholdings, it invoked FOIA Exemptions 3, 6, 7(A), 7(C), 7(D), and

7(E), as well as a Privacy Act exemption not relevant here.  See Hardy Decl., Exh. Y.  In

contrast, however, the Bureau refused even to search for records relating to Bartko's three co-

conspirators on the ground that they had not waived their privacy interests and that FOIA's

personal-privacy exemptions – 6 and 7(C) – thus barred disclosure.  See Hardy Decl., Exhs. G,

H, I, J, K.

OPR, for its part, immediately released its operating regulations and identified seven

responsive documents, which related to a complaint Bartko himself had filed against Wheeler.

Barnett Decl., ¶¶ 9-10.  The agency released five of those documents in full and withheld two in

part pursuant to Exemptions 5, 6, and 7(C).  Id.  As for any other potentially responsive records

relating to Wheeler, OPR was more guarded.  Instead of invoking a particular exemption, the

Office issued a Glomar response – a relatively esoteric FOIA device whose contours the Court

will explore in some detail below – refusing to confirm or deny that any such records existed at

all because to do so would violate Wheeler's interest in keeping private the fact that OPR had

investigated him (or not), including in connection with Bartko's prosecution.  See id., Exh. D.

After some further procedural steps – the Court will spare the reader – Bartko filed this

suit asking the Court to compel the FBI, OPR, and the other relevant agencies to grant him

access to the documents he requested.  The agencies moved for summary judgment, Bartko cross-moved, some of the agencies replied, Bartko replied to some of the agencies, and now, mercifully, we have arrived at what will likely be the first of several Opinions addressing something approximating the merits of the case.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In FOIA cases, the agency bears the ultimate burden of proof.  See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, n.3 (1989).  The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III.    Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

In addition to the main ticket – OPR's Glomar response and the propriety of the agencies' withholdings under several exemptions – the parties have teed up a litany of picayune issues for the Court. These include whether the agencies responded to Bartko's FOIA requests in a timely manner, whether Bartko was eligible for a fee waiver, and whether certain Government

5

declarations are admissible. The Court sides with Bartko on several of the big questions; as a result, it will not grant summary judgment for either side today. Because the case will proceed, the Court may reserve judgment on these remaining issues for another day, in the event they remain disputed.

A. OPR's Glomar Response

Generally, an agency must respond to a FOIA request by conducting a search and making the requested records available unless they fall within one of the statute's nine enumerated exemptions. See 5 U.S.C. § 552(a)(3)(A), (b)(1)-(9). When an agency does withhold documents, it typically must explain what has been withheld and why. See, e.g., Vaughn v. Rosen, 484 F.2d 820, 825-28 (D.C. Cir. 1973) (requiring "relatively detailed" and "specific[]" explanations of withholdings). There is, however, an exception to even this rule when "confirming or denying the existence of records would" itself reveal protected information. Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995). When the Government refuses to confirm or deny the existence of records, it issues a so-called Glomar response, named after a Cold War-era salvage vessel that was part of a covert project that the CIA wanted to keep confidential. See Marino v. Drug Enforcement Admin, 685 F.3d 1076, 1078 n.1 (D.C. Cir. 2012); Phillippi v. CIA, 546 F.2d 1009, 1011 (D.C. Cir. 1976). "A Glomar response is 'an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information.'" Marino, 685 F.3d at 1078 n.1 (quoting Roth v. Dep't of Justice, 642 F.3d 1161, 1178 (D.C. Cir. 2011)).

For a Glomar response to be appropriate, the Government must show that revealing the very existence of records would "cause harm cognizable under a[] FOIA exception." Wolf v.

CIA, 473 F.3d 370, 374 (D.C. Cir. 2007).  OPR attempts to justify its <u>Glomar</u> response here by reference to Exemptions 6 and 7(C).  Those exemptions protect certain "files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" and "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6) & (7)(C).  In <u>Glomar</u> cases, Exemptions 6 and 7(C) allow agencies to conceal the existence of responsive documents if merely acknowledging that such records exist would compromise an individual's privacy. <u>Nation Magazine</u>, 71 F.3d at 893.  Law-enforcement agencies like the FBI and DOJ routinely issue <u>Glomar</u> responses "when responding to requests for documents regarding alleged government informants, trial witnesses, subjects of investigations, or individuals who may merely be mentioned in a law enforcement record."  Department of Justice, <u>Guide to the Freedom of Information Act</u> 597-98 (2009 ed.).  Such a response is often appropriate because the very "mention of an individual's name in [an investigative] file will engender comment and speculation and carries a stigmatizing connotation."  <u>Schrecker v. Dep't of Justice</u>, 349 F.3d 657, 666 (D.C. Cir. 2003) (quoting <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 767 (D.C. Cir. 1990)); <u>Roth</u>, 642 F.3d at 1174 ("the targets of . . . investigations . . . have a substantial interest in ensuring that their relationship to the investigations remains secret").

Once a privacy interest sufficient to trigger the privacy exemptions has been identified, courts must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information" to determine whether the agency's response was appropriate.  <u>Beck v. Dep't of Justice</u>, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting <u>Davis v. Dep't of Justice</u>, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).  If the Government

cannot identify any privacy interest, however, then no balancing is necessary. Agencies, for

example, may not rely on Exemption 6 or 7(C) – or any other exemption – to withhold

"information that has been 'officially acknowledged' or is in the 'public domain.'" Davis, 968

F.2d at 1279.

        In refusing to confirm or deny the existence of documents relating to any investigation of

Clay Wheeler (other than the seven documents previously mentioned), OPR has identified one

potential privacy interest at issue here: Wheeler's interest in not having it known that he has been

the subject of an OPR investigation. As the Government has noted, people involved in a

government investigation – witnesses, investigating agents, and the person being investigated –

"have a substantial interest in ensuring that their relationship to . . . [the] investigation[] remains

secret." Roth, 642 F.3d at 1174 (internal quotation marks omitted). As the potential subject of

an investigation, then, Wheeler would ordinarily have a privacy interest in protecting information

about that investigation.

        Bartko, however, suggests that confirming the mere existence of an investigation would

not risk an unwarranted invasion of Wheeler's privacy, as various components of the federal

Government have acknowledged that Wheeler's handling of Bartko's criminal case was referred

to OPR. Such an acknowledgement can render a Glomar response inappropriate. See Marino,

685 F.3d at 1081-82 (Glomar response not appropriate where existence of records has been

acknowledged); see also American Civil Liberties Union v. CIA, 710 F.3d 422, 427 (D.C. Cir.

2013) ("[T]he plaintiff can overcome a Glomar response by showing that the agency has already

disclosed the fact of the existence (or nonexistence) of responsive records."). This will be the

case, however, only if the plaintiff can point to "information in the public domain that appears to

duplicate that being withheld." ACLU, 710 F.3d at 427 (quoting Afshar v. Dep't of State, 702

F.2d 1125, 1130 (D.C. Cir. 1983)).  Prior disclosure of similar information does not suffice; instead, the specific information withheld via the Glomar response must already be public. Public Citizen v. Dep't of State, 11 F.3d 198, 201, 203 (D.C. Cir. 1993).

With respect to OPR's Glomar response, then, the Court addresses one question and one question only: Was that response appropriate in light of the fact that certain information about Wheeler had already been publicly disclosed?  Put another way, does any privacy interest remain in concealing the records' very existence, or has that Cold War-era salvage vessel already sailed?

The Government's argument on this front centers on the fact that it never officially acknowledged that Wheeler was being investigated.  Although that may seem like little more than a debater's point, the formality of any such admission turns out to be important – if not dispositive – in this case, as an individual's privacy interest is not extinguished merely because the media reports or the public speculates that the individual may have been the subject of an investigation.  See Afshar, 702 F.2d at 1130 (rejecting suggestion that public and media speculation about CIA liaison with Iranian government constituted prior disclosure); see also Public Citizen, 11 F.3d at 201 ("even if a fact has been the subject of media speculation, its official acknowledgment could" cause damage).  Instead, public acknowledgement is enough to vitiate the relevant privacy interest – and to require that the agency at the very least confirm the existence of an investigation – only if the contested information was made public through an "official and documented disclosure."  Wolf, 473 F.3d at 378.

At this point, an accounting of the terms of the debate will be helpful: Bartko requested all records concerning any investigation into Wheeler's conduct as a prosecutor, and OPR refused to confirm or deny that Wheeler was ever under investigation at all.  If the Government's prior disclosures establish the existence (or not) of any such investigation, that disclosure

necessarily "duplicate[s] [the information] being withheld." A.C.L.U., 710 F.3d at 427. And, indeed, the mere fact of an investigation has been acknowledged – publicly and officially – on several occasions. The current United States Attorney for the Eastern District of North Carolina, Thomas Walker, for example, has publicly acknowledged that he referred Wheeler's conduct in Bartko's case to OPR. See Opp. to OPR, Exh. 42, at 12 (Daily Report for Executives, Court Upholds Securities Lawyer's Conviction But Slams Prosecutions for Discovery Abuse, Aug. 29, 2013). In addition, the Fourth Circuit, in its opinion upholding Bartko's conviction, noted that although Wheeler's misconduct did not change the outcome of the case, it was not "harmless" in a broader sense. As a result, it referred Wheeler to Attorney General Eric Holder and OPR. See Bartko, 728 F.3d at 341-42.

OPR nevertheless presents two main counterarguments with respect to Glomar: (1) OPR itself – as opposed to another component of DOJ or the rest of the federal government – never officially acknowledged an investigation into Wheeler's conduct, and (2) any public discussion that did occur was mere media speculation. With respect to the first argument, the weight of the case law is firmly against the agency. In Marino, for example, the court held that although a prosecutor had released certain information – rather than the DEA, the defendant in that case – this release was "enough to trigger the public domain exception" where the request was directed to another component of DOJ. Marino, 685 F.3d at 1082. Similarly, here, although it was Walker, a U.S. attorney – rather than OPR, the defendant in this case – who confirmed that Wheeler was under investigation, the prosecutor's decision to acknowledge the investigation is "enough to trigger the public domain exception," as both Walker and OPR work for DOJ.

OPR's second argument is perhaps more persuasive, but it, too, fails. It is true that the smoking gun Bartko presents – Walker's acknowledgement that he had referred Wheeler's case

to OPR – was reported in the popular press and was not – at least as far as the Court knows – memorialized in a press release or official report. The forum in which an official acknowledges the existence of an investigation, however, is not dispositive. While the Court may not infer official disclosure merely from "widespread public discussion" of a matter, see Wilson v. CIA, 586 F.3d 171, 186-87 (2d Cir. 2009), a statement to the media made by a person authorized to speak for the agency certainly suffices.

The Government's disclosures thus definitively establish that the wheels of an investigation into Wheeler's conduct with respect to Bartko's case had at least begun to turn. Bartko, therefore, has carried his burden of showing that the Government has acknowledged an investigation into Wheeler's conduct, and the Government may not submit a Glomar response predicated on Wheeler's interest in keeping such an investigation quiet. Although Wheeler may, of course, have a privacy interest in protecting the content of documents related to the investigation, as the subject of a confirmed investigation he does not have a privacy interest in concealing this status or the existence of related documents. See Benavides v. Drug Enforcement Admin., 968 F.2d 1243, 1246 (D.C. Cir. 1992).

With that issue decided, the Court must now determine the nature of the information to which Plaintiff is entitled. The Government officially acknowledged the existence of an investigation into Wheeler's misconduct only in connection with Bartko's criminal trial. As a result, Bartko is entitled to a substantive response regarding that information and that information only. In other words, the Department must search for records associated with that OPR inquiry. If an adequate search turns up no records, that will end the matter. If, however, such records do exist and come up in a search, the Government must either disclose them or provide a Vaughn Index supporting its redactions or withholdings. At the same time, Bartko has

pointed to no official acknowledgement of any other investigation – that is, the Court finds that the Department has not officially acknowledged that Wheeler is being investigated for misconduct related to any criminal case beyond Bartko's. As a result, the <u>Glomar</u> response with respect to other investigations is proper, and the Department need not acknowledge anything further.

### B. FBI's Exemptions

Bartko asked the FBI for records concerning himself, five companies, and four other individuals, including three of his co-conspirators who served as witnesses during his criminal trial. The agency withheld much of that information pursuant to Exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E). The Court, of course, is aware that if any exemption applies to a particular document in full, that document may be withheld. In this case, however, the <u>Vaughn</u> Index and government declarations, as well as Plaintiff's briefs, are not crystal clear about which exemptions – with the exception of Exemption 3 – cover which portions of which documents. Because the Court will not grant summary judgment to either party on those exemptions, this shortcoming does not prevent it from proceeding with the Opinion. Nevertheless, the Court trusts that future pleadings and exhibits will be more precise.

#### 1. *Exemptions 6 and 7(C)*

The Court begins with the strongest of Plaintiff's arguments: those that relate to Exemptions 6 and 7(C). Bartko requested records that implicate four individuals directly and countless anonymous others indirectly, though he has since waived his arguments with respect to the nameless third parties whose identifying information was caught up in the FBI's records. <u>See</u> Bartko Cross-Mot. at 29. One of the named targets, moreover, had died by the time of the FOIA request, so his personal privacy was not at issue, and the FBI complied with its obligations with

respect to him.

Bartko's three co-conspirators and the Bureau's arguments on this front, however, are still alive. Because none of the three waived his or her right to privacy, the FBI refused even to search for documents relating to them on the ground that any records that would arise from such a search would be protected by the personal-privacy exemptions. See Hardy Decl., Exhs. C, D, E.

Bartko suggests that such a categorical denial is impermissible. He is correct. Indeed, the Exemption 6/7(C) inquiry requires that the agency – and ultimately the Court – "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). "Because the myriad . . . considerations involved in the [privacy-exemption] balance defy rigid compartmentalization, per se rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored." Stern v. FBI, 737 F.2d 84, 91 (D.C. Cir. 1984). "Only when the range of circumstances included in the category 'characteristically supports an inference' that the statutory requirements for exemption are satisfied is such a rule appropriate." Nation Magazine, 71 F.3d at 893 (quoting Dep't of Justice v. Landano, 508 U.S. 165, 177 (1993)). To uphold the FBI's categorical denial – indeed, its refusal to conduct a search at all – then, the Court must find that the co-conspirators' privacy interests in the documents "characteristically" outweigh the public's interest in those documents.

The nature of the information that would arise from such a search, however, does not admit of such categorical conclusions. Perhaps, for example, the FBI might unearth documents that merely summarize the individuals' trial testimony or synthesize other innocuous and public

facts about them.  Such records would be unlikely to implicate a privacy interest that could

outweigh the public's interest in disclosure.  But because the Bureau did not conduct a search at

all, neither it nor the Court has anything on which to come to a contrary conclusion.  Under the

circumstances, the Court will order that the FBI search for records concerning the three co-

conspirators and either release them or provide an appropriate <u>Vaughn</u> Index.  <u>See</u> <u>Citizens for</u>

<u>Responsibility & Ethics in Washington v. Dep't of Justice</u>, 746 F.3d 1082, 1095-96 (D.C. Cir.

2014) (rejecting government's refusal to search for category of records under these exemptions);

<u>Citizens for Responsibility and Ethics in Washington v. Dep't of Justice</u>, 846 F. Supp. 2d 63, 73-

75 (D.D.C. 2012) (same).

        A note on next steps: Bartko contends that any records relating to his co-conspirators will

be ripe for release even if the FBI convinces the Court that their privacy interests outweigh the

public's interest in disclosure, as DOJ has already released "mountains" of information about

those three into the public domain.  The Court, however, is not in a position to decide the point

today.  After all, for all of Plaintiff's persuasive points, he has not identified any <u>specific</u>

information that the FBI has refused to release but that is already public.  Instead, he has pointed

out only that the co-conspirators testified at his trial and that their names and identifying

information are already public.  Such information, however, may not be the lion's share of what

the FBI ultimately attempts to withhold.

        This case, then, is not like <u>Wilson v. Dep't of of Justice</u>, where this Court forced the

Government to acknowledge one specific piece of information: the identity of an informant who

had already been outed in Court.  <u>See</u> No. 13-2053, 2014 WL 2115508, at *7 (D.D.C. 2014).

Nor is this issue particularly akin to the Wheeler discussion above, where the Court concluded

that OPR could not refuse to confirm the <u>existence</u> of an investigation that had already been

acknowledged. In both of those cases, it was possible for the Court to point to a particular piece of information that the Government had to acknowledge; here, it can do no such thing. In these circumstances, the Court cannot determine whether and to what records the public-domain exceptions might apply, so it must ask Plaintiff to be more specific the next time around.

2. *Exemption 3*

Exemption 3 covers records "specifically exempted from disclosure by statute . . . [provided that such statute either] (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The contested statute here, Federal Rule of Criminal Procedure 6(e) – Plaintiff does not appear to contest the FBI's withholdings under the Bank Secrecy Act – bars the disclosure of matters occurring before a grand jury. See Fed. R. Crim. P. 6(e)(2)(B). Because it was affirmatively enacted by Congress, Rule 6(e) is recognized as a "statute" for Exemption 3 purposes. See Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv., 656 F.2d 856, 867 (D.C. Cir. 1981). The Rule's grand-jury-secrecy requirement is applied broadly and embraces any information that "tend[s] to reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." Lopez v. Dep't of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (internal quotation marks omitted). In the absence of a statutory exception to the general presumption of grand-jury secrecy, Rule 6 is "quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule," and "the rule's ban on disclosure is for FOIA purposes absolute and falls within . . . Exemption 3." Fund for Constitutional Gov't, 656 F.2d at 868.

According to the FBI, the records responsive to Plaintiff's request "reflect that one or more federal grand juries were empanelled in relation to the investigation(s) at issue here, and information in the investigative files responsive to plaintiff['s] requests reveals matters occurring before the grand jury." Hardy Decl., ¶ 52. In particular, the Government notes, the withheld documents "contain information about the names of recipients of federal grand jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand jury in response to federal grand jury subpoenas." Id. Bartko argues that the Hardy Declaration is not sufficiently specific on this point. The Court disagrees. The Hardy Declaration clearly and specifically delineates what information the withheld documents would disclose. The Court can require nothing more without asking the agency to disclose the information it properly seeks to withhold.

### 3. *Exemptions 7(A), (D), and (E)*

Under FOIA, a defendant agency is required to provide a specific basis for each withholding. "Boilerplate," in contrast, "will not do." Citizens for Responsibility & Ethics in Washington v. Dep't of Justice, 746 F.3d 1082, 1101 (D.C. Cir. 2014). Indeed, "near-verbatim recitation[s] of the statutory standard" and "bald assertion[s]" that "amount[] to little more than recitation of the statutory standard" are insufficient to support the decision to invoke a FOIA exemption. Id. In attempting to justify its withholdings under Exemptions 7(A), 7(D), and 7(E) here, however, the FBI has presented little more.

### i. Exemption 7(A)

FOIA exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C.

§ 552(b)(7)(A). Exemption 7(A) reflects Congress's recognition that "law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978). There is no dispute that the requested records were compiled for law-enforcement purposes. To justify withholding, then, the FBI must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." Mapother v. Dep't of Justice, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted).

Defending the agency's Exemption 7(A) withholdings, however, the Hardy Declaration notes only that "the FBI has asserted Exemption (b)(7)(A) in a limited fashion to protect the names and file numbers of pending FBI investigations." Hardy Decl., ¶ 59. The Declaration provides no specifics about, for example, the investigation – or even the type of investigation – that could be compromised or how the release of the information requested would interfere with any particular ongoing investigation. See, e.g., CREW, 746 F.3d at 1099 (finding declaration sufficient where description included name of potential criminal defendant, defendants awaiting sentencing, and nature of alleged crimes being investigated). Until the FBI provides something approaching this level of specificity – and perhaps certain sensitive information may be provided *in camera* – the Court will not be in a position to consider its argument for summary judgment on Exemption 7(A).

ii. Exemption 7(D)

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source . . .

17

[who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks omitted).

"[I]t is not enough for the [FBI] to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." Roth, 642 F.3d at 1184. The Court's analysis must be more searching. When there has not been an express assurance of confidentiality, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential. These factors include "the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed." Id. (citations and internal quotation marks omitted).

The Hardy Declaration acknowledges that there was no express assurance here; instead, it relies on implied confidentiality. See Hardy Decl., ¶ 76. After describing generally the way in which confidential sources assist the FBI and the need for such sources to remain confidential, see id., ¶¶ 75-77, the Declaration turns to a more detailed discussion of the specific information withheld here. Only slightly more detailed, it turns out, as the Declaration merely recites the factors courts have used to determine whether such an assurance exists. It does not apply those

factors to any particular informant.

While recognizing the FBI's concerns in divulging too much information regarding its confidential sources, the Court agrees with Bartko that the details in this description are so sparse that Plaintiff does not have sufficient information to challenge whether the circumstances support an inference of confidentiality. At a minimum, the agency must provide some description of the nature of the crime at issue, the source's specific relation to the crime, and the other Roth factors. See Miller v. Dep't of Justice, 872 F. Supp. 2d 12, 27 (D.D.C. 2012). The Court cannot sanction the withholdings under Exemption 7(D) as the record now stands. Defendant shall therefore release the documents withheld pursuant to this exemption or file a subsequent summary-judgment motion supported by adequate declarations.

### iii. Exemption 7(E)

Exemption 7(E) permits withholding of records "compiled for law enforcement purposes" if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In order to properly invoke Exemption 7(E), the agency must satisfy two requirements: First, the record must be compiled for law-enforcement purposes; and second, production must disclose either techniques and procedures for law-enforcement investigations or guidelines for law-enforcement investigations that would risk circumvention of the law.

As the Court has noted, Plaintiff concedes the former point. On the latter, though, the Hardy Declaration comes up short once again. The Declaration spends significant space outlining the Exemption 7(E) standard, and it even goes so far as to describe the law-

enforcement procedures at issue.  The reader learns that the FBI's Computer Analysis and Response Team Reports, for example, consist of notes, reports, and data resulting from the Bureau's analysis of digital media seized pursuant to search warrants or subpoenas. Conspicuously absent from this dive into modern investigative technology, however, is any mention of how disclosure of the bare <u>data</u> contained in CART reports might reveal any technique, procedure, or technological method the FBI uses.  The descriptions of the other categories of information withheld under Exemption 7(E) are similarly deficient.  The Court does not discount the possibility that the agency may be able to prove that disclosure would be harmful, but neither the Hardy Declaration nor the FBI's briefs have done so yet.  As a result, the Court will, once again, order the FBI to submit a further affidavit if it hopes to prevail on Exemption 7(E).

    C.  <u>Digital Media</u>

    Finally, the Court will spend as few lines as possible on the FBI's transparently implausible argument that certain records it identified as responsive to Bartko's FOIA request need not be disclosed because they reside on two CDs and a thumb drive.  The Bureau's rationale seems to be that the electronic media in question are not "records" for FOIA purposes because they are physical items that were presented to prosecutors as evidence.  Why this reasoning would exclude CDs that hold documents in digital form but not, say, the printer paper that will eventually hold this Opinion is beyond the Court.  In any case, no sophistry is necessary here, as Congress, with commendable technological foresight, amended FOIA in 1996 to cover records "maintained by an agency in any format, including an electronic format."  1996 Pub. L. No. 104-231, 110 Stat. 3049 (codified at 5 U.S.C. § 552(f)(2)).  With that amendment in mind, the Court will order that the FBI either produce the records contained on the CDs and flash drive

in question or justify their withholding with reference to one or more FOIA exemptions.

IV.     **Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment in part and deny it in part, and it will do the same with Plaintiff's Motion. It will order, further, that OPR search for documents relating to an investigation of Clay Wheeler stemming from Bartko's criminal case and that the FBI search for documents relating to Bartko's three co-conspirators and process the two CDs and one flash drive discussed here. If the parties thereafter believe that further briefing is required, they may present a proposed schedule to the Court. A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  August 5, 2014