UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY BARTKO,<br><br> Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br> Defendants. | Civil Action No. 13-1135 (JEB) |

### MEMORANDUM OPINION

*Pro se* Plaintiff Gregory Bartko, who is currently serving a lengthy prison term for white-collar offenses, has sent a spate of Freedom of Information Act requests to various federal agencies, hoping to obtain records demonstrating prosecutorial misconduct in his case. The Court has already issued several other Opinions addressing the merits of certain requests, see, e.g., Bartko v. DOJ, 2014 WL 3834343 (D.D.C. Aug. 5, 2014), and it now examines the Internal Revenue Service's withholding of 136 pages under certain FOIA exemptions. Believing that the IRS has appropriately declined to release these records, the Court will grant its Partial Motion for Summary Judgment and deny Plaintiff's.

**I. Background**

As a prior Opinion set forth in some detail the factual background of this suit, see id., the Court will now describe only those events that directly relate to the Motion considered here. The facts relating to the particular FOIA request at issue, moreover, are essentially undisputed.

1

On January 7, 2013, Bartko submitted a request to the United States Postal Inspection Service (USPIS) seeking "all records and/or data contained in the files of your agency and specifically under my name and/or identifier assigned to my name as set forth above." Def. Mot., Att. 1 (Declaration of Kimberly Williams), Exh. A (Letter) at 1. The letter then listed specific types of files that were included within his request. See id. After a detailed search uncovered over 1000 pages, USPIS referred some of the documents to other agencies for direct responses to Plaintiff. See Williams Decl., ¶¶ 4, 10. Of relevance to this Motion, 136 pages were referred to the IRS because those documents had originated there. See Def. Mot., Att. 2 (Declaration of Michael Franklin), ¶ 3. (As they derived from a joint criminal investigation undertaken by the FBI, the IRS, and USPIS, they had ultimately wound up with that last agency. See id., ¶ 8.)

According to the IRS, these documents consist solely of memoranda of interviews with witnesses in an IRS criminal investigation. See id. That investigation, notably, was of someone other than Bartko. See id. Each memorandum was authored by IRS Criminal Investigation Special Agent William DeSantis, see id., and all were withheld under FOIA Exemptions 6 and 7(C).

Bartko filed suit here on July 26, 2013, naming a congeries of agency Defendants. On May 23, 2014, USPIS and the IRS jointly moved for partial summary judgment, see ECF No. 58, and Plaintiff cross-moved on June 6. See ECF No. 65. The Court then granted many extensions, in part because the parties wished to await its rulings related to other agencies' motions. See, e.g., Minute Order of Nov. 7, 2014. USPIS eventually withdrew its part of the Motion and will file a renewed pleading, while the IRS decided to stand on its initial brief. See ECF No. 143

(Motion for Extension of Time) at 1. The Court thus considers only the two cross-motions, ECF Nos. 58 & 65.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the evidence in the light most favorable to the non-moving party. See Sample, 466 F.3d at 1087.

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In such cases, the agency bears the ultimate burden of proof. See DOJ v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III. Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361

(1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dept. of Agriculture v. Reporters Comm., 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

With these standards in mind, the Court will consider the single issue raised by the Motion: is the IRS's invocation of Exemption 6 or 7(C) appropriate? In doing so, the Court begins with the parameters of those two exemptions, balances the interests involved here, and then analyzes segregability.

    A.  Exemptions 6 and 7(C)

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release

of the requested information." Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same weighing of interests, the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because its "privacy language is broader than the comparable language in Exemption 6 in two respects." Reporters Comm., 489 U.S. at 756. First, Exemption 6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the adverb "clearly." See id. Second, Exemption 6 prevents disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be expected to constitute" such an invasion. See id. Both differences are the result of specific amendments, reflecting Congress's conscious choice to provide greater protection to law-enforcement materials than to personnel, medical, and other similar files. See id. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. See ACLU v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997 F.2d at 1491.

As a result, if the records and information the IRS seeks to withhold in this case were "compiled for law enforcement purposes," the Court may only address whether the Service has properly withheld these documents under Exemption 7(C), and there is no need to consider the higher bar of Exemption 6. Plaintiff here never contests the fact that the records were compiled for law-enforcement purposes. Nor would he have much luck doing so given that they all relate to an IRS criminal investigation. See Franklin Decl., ¶ 8.

This threshold question answered, the first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought. See ACLU, 655

F.3d at 6. In this context, the Supreme Court has rejected a "cramped notion of personal privacy" and emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." Reporters Comm., 489 U.S. at 763. To constitute a privacy interest under FOIA, the claimed interest must be "substantial." Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1174 (D.C. Cir. 2011). "[S]ubstantial," however, "means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." Multi Ag Media, 515 F.3d at 1229-30.

In the context of Exemption 7(C), it is well established that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." Stern v. FBI, 737 F.2d 84, 91-92 (D.C. Cir. 1984); see also Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) ("It is surely beyond dispute that 'the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.'") (quoting Branch v. FBI, 658 F. Supp. 204, 209 (D.D.C. 1987)); Nation Magazine, Wash. Bureau v. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995) ("[I]ndividuals have an obvious privacy interest . . . in keeping secret the fact that they were subjects of a law enforcement investigation."). Even the mere acknowledgement of the existence of records relating to criminal investigations (let alone their contents) can constitute an invasion of privacy. This privacy interest is strongest where the individuals in question "have been investigated but never publicly charged." ACLU, 655 F.3d at 7. As far as the Court knows, this is the case here.

It is not just the subject of the investigation who has privacy rights, however. "[T]hird parties who may be mentioned in investigatory files, as well as . . . witnesses and informants who provided information during the course of an investigation," have a privacy interest in the

contents of law-enforcement records.  See Nation Magazine, 71 F.3d at 894; see also Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) ("It goes almost without saying, moreover, that individuals other than [the target of the investigation] whose names appear in the file retain a strong privacy interest in not being associated with an investigation involving professional misconduct . . . .").  Indeed, this interest is so strong that our Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'"  Schrecker v. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting SafeCard, 926 F.2d at 1206).

    B.  Balancing of Interests

Having set forth the general privacy interests related to criminal investigations, the Court must now assess whether such interests exist here.  This is not an onerous task.  The IRS explains that the subject of the investigation was a third person, not Bartko.  According to Michael Franklin, an attorney in the IRS's Office of the Associate Chief Counsel who has reviewed the 136 pages at issue, all of these records "provide[] details of the third party criminal investigation."  Franklin Decl., ¶¶ 1, 15.  "The dialogue, individuals interviewed, subject matter, and other information appearing on these pages would provide sufficient information, if revealed, to identify the third party who is the subject of the investigation."  Id., ¶ 15.  In addition, "the material reflects the names, telephone numbers, social security numbers, and taxpayer identification numbers of witnesses interviewed in the furtherance of the USPIS investigation of a third party."  Id.  The IRS has thus placed a significant privacy weight on the scales.

To offset this weight, Bartko produces very little.  The only interest he articulates that could remotely be labeled as public is that "within the 136 pages . . . , each of the individuals interviewed by S/A DeSantis were either co-defendants, alleged co-conspirators or witnesses who's [sic] statements also bear relevance to Bartko's investigation and prosecution."  Id. at 15-16.  But relevance is not the test.  The question under Schrecker is whether disclosure is necessary in the public interest to determine if the agency engaged in illegal activity.  As Plaintiff does not even assay this hurdle, the Court cannot find he has surmounted it.  In an ultimate balancing, something in the privacy bowl outweighs nothing in the public-interest bowl every time.

    C.  Segregability

Plaintiff last objects – in rather summary fashion – that Defendants' segregability analysis is insufficient.  While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not vitiate its obligation to carry its evidentiary burden and fully explain its decisions on segregability.  See Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).  The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining Government affidavits explained nonsegregability of documents with "reasonable specificity").  "Reasonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

Although Franklin's testimony on segregability is somewhat conclusory, see Franklin Decl., ¶¶ 17-20, the Court sees no reason here to question it.  The documents at issue are all memoranda of witness interviews.  Since any disclosure of the identity of either the subject of the investigation or witnesses would be improper, it is highly unlikely that any material in these memoranda could be released without compromising such information.  The Court thus concludes that the IRS has passed the segregability examination.

## IV. Conclusion

For the foregoing reasons, the Court will grant summary judgment in favor of the IRS on these documents referred by the USPIS.  An Order consistent with this Opinion shall issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  February 9, 2015