**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GREGORY BARTKO,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 13-1135 (JEB)** |
| **UNITED STATES DEPARTMENT OF JUSTICE,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Plaintiff Gregory Bartko, currently serving a 23-year prison sentence for securities fraud, is seeking to exonerate himself by proving prosecutorial misconduct.  To that end, he has brought this *pro se* suit under the Freedom of Information Act against a number of Department of Justice components, including, *inter alia*, the Executive Office of United States Attorneys and the Office of Professional Responsibility.  This Court has already issued several other Opinions addressing the merits of related FOIA requests in this case.  See, e.g., Bartko v. United States Dep't of Justice, No. 13-1135, 2015 WL 513272 (D.D.C. Feb. 9, 2015).  This Opinion resolves the latest skirmish over the release of documents pertaining to his prosecution.

Bartko asserts that he is entitled to partial summary judgment against EOUSA and that the Court should compel the agency to release responsive records in its possession notwithstanding his refusal to pay assessed processing fees.  EOUSA, conversely, contends that partial summary judgment in <u>its</u> favor is justified on the grounds that its redactions are proper and that Plaintiff did not merit a fee waiver.  The Court sides with the agency on this one.

I.       **Background**

As a prior Opinion set forth in some detail the factual background of this suit, see Bartko

v. United States Dep't of Justice, No. 13-1135, 2014 WL 3834343, at *1 (D.D.C. August 5,

2014), the Court will now describe only those events that directly relate to the present Motions.

Such events actually start with a different agency.  On July 26, 2014, Plaintiff submitted a

FOIA request to OPR, seeking records relating to himself and his criminal case.  See Pl. Mot.,

Exh. 1 (July 26, 2014, letter) at 1.  He also included in this letter a request for a fee waiver.  See

id. at 1-2.  OPR issued its final determination in response on September 10, in which it explained

that it had identified 610 pages of records that primarily related to EOUSA, and it had thus

referred those records there for review and release.  See Pl. Mot., Exh. 2 (September 10, 2014,

letter) at 1.  (EOUSA elsewhere calculates the number of pages at 620, see Def. Mot. & Opp.,

Att. 1 (Declaration of David Luczynski), Exh. C (EOUSA Final Action Letter) at 1, which seems

correct given the breakdown discussed shortly.  The Court will thus use this number.)

As Plaintiff received no documents for several months thereafter, he sought relief from

this Court in his Second Supplemental Complaint, which he filed on December 16, 2014.  See

ECF No. 126.  On January 13, 2015, he moved for partial summary judgment, arguing that

EOUSA had failed to timely process or release the referred records.  He also argued that he had

exhausted administrative remedies because approximately three months had passed since

EOUSA received the September 10, 2014, referral from OPR, and this period exceeded the

twenty working days in which it was required to respond.  See ECF No. 139 at 3-8 (citing 5

U.S.C. § 552(a)(6)(A)(i)).

On February 9, 2015, EOUSA finally responded by releasing 89 pages in full and 12

pages in part.  See Final Action Letter.  It appears that at least some of the delay was caused by

the initial group of records' being misplaced or lost in transmission between OPR and EOUSA. See Response re Motion for Leave to File Second Supplement Complaint, Exh. 1 (Supplemental Declaration of David Luczynski) at 3.  While the agency's form letter did not specifically address Bartko's fee-waiver request, it did explain that – in compliance with DOJ regulations – the first 101 pages were being released without charge, but the 519 additional pages would be subject to payment of a $51.90 fee.  See EOUSA Final Action Letter at 1.  Plaintiff was informed that if he objected to paying the fee, he could appeal this assessment to the Office of Information Policy.  See id. at 2.  Bartko submitted an administrative appeal to OIP on March 5, 2015, and that appeal is currently pending.  See Pl. Opp. & Reply at 6.

EOUSA has now cross-moved to dismiss Plaintiff's claims and also seeks partial summary judgment.

**II.   Legal Standard**

Given the posture of Defendant's Motion, the Court sets out the standard for both a motion to dismiss and one for summary judgment.

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a suit when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations"

3

are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to

state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation

omitted). Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very

remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief

above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416

U.S. 232, 236 (1974)).

In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts may consider

"the facts alleged in the complaint, any documents either attached to or incorporated in the

complaint and matters of which [the court] may take judicial notice." Equal Emp't Opportunity

Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). "Documents

that are referenced in, or are an integral part of, the complaint are deemed not 'outside the

pleadings'" for purposes of a motion to dismiss for failure to state a claim. Norris v. Salazar,

885 F. Supp. 2d 402, 407 n.9 (D.D.C. Aug. 17, 2012).

Summary judgment, conversely, may be granted if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the

outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."). In the event of conflicting evidence on a

material issue, the Court is to construe the conflicting evidence in the light most favorable to the

non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

Factual assertions in the moving party's affidavits or declarations may be accepted as true unless

the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of United States Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  United States Dep't of Justice v. Reporters Comm. for the Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.   Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146,

152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 755.  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  Id. (quoting 5 U.S.C. § 552(a)(4)(B)).  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Although the parties' Cross-Motions can be difficult to follow and do not always address the same matters, the Court can tease out two separate issues: (1) the propriety of the withholdings in the initial disclosure of 101 pages, and (2) EOUSA's treatment of fees relating to the remaining documents in its possession.

A.  Documents Produced

EOUSA initially contends that, pursuant to FOIA Exemption 5, it properly redacted certain information from 12 of the 101 pages of documents it released on February 9, 2015. Plaintiff apparently concedes that these partial redactions do contain information covered by this exemption.  See Pl. Opp. & Reply at 12-13, 24.  Although Bartko did not "intend to waive any challenge to any of the [remaining 519 pages of] records being withheld by the EOUSA," he did acknowledge that the disclosed and redacted records

> appear to be the type of communications often times exchanged
> between an attorney and a client or another attorney representative
> of a client.  Such communications are generally privileged and not
> subject to civil discovery under the Federal Rules of Civil
> Procedure and oft times exempt from release under FOIA
> Exemption (b)(5).

Id. at 13.  The Court, therefore, will not further scrutinize the admittedly proper invocation of

Exemption 5, and it will grant EOUSA's Motion for Partial Summary Judgment with respect to

these 101 pages.

    B.  Fees

    The remaining 519 pages, however, represent more hotly contested territory.  The dispute

centers not on redactions or withholdings, but instead on fees assessed.  Defendant preliminarily

seeks dismissal on the ground that Plaintiff failed to exhaust his administrative remedies in

connection with seeking a fee waiver.  Even if he has exhausted, EOUSA maintains that no fee

waiver is warranted here.  Plaintiff, in turn, takes issue with both of these positions and also

alleges bad faith on the agency's part.  The Court separately addresses each of these three

contentions.[1]

    *1.  Exhaustion*

    Exhaustion of administrative remedies in the FOIA context is certainly not a road less

travelled by fellow judges on this district court.  As one noted:

> [E]xhaustion of administrative remedies is a mandatory
> prerequisite to a lawsuit under FOIA, which means that a requester
> under FOIA must file an administrative appeal within the time
> limit specified in an agency's FOIA regulations or face dismissal
> of any lawsuit complaining about the agency's response.  Although
> exhaustion of a FOIA request is not jurisdictional because the

---

[1] One other minor point deserves mention here.  Although Bartko confines his Second Supplemental Complaint to the aforementioned 620 pages of documents, both sides in their briefing also incorporate reference to an additional 320 pages referred by OPR to EOUSA on December 17, 2014, the day after Plaintiff filed that Complaint.  See, e.g., Pl. Mot. at 8.  The Court will not examine this issue because it is both outside of the operative Complaint and because the Court cannot discern what amount of additional fees relates to these records.

> FOIA does not unequivocally make it so, still as a jurisprudential
> doctrine, failure to exhaust precludes judicial review if [1] the
> purposes of exhaustion and [2] the particular administrative
> scheme support such a bar.

Ctr. For Biological Diversity v. Gutierrez, 451 F. Supp. 2d 57, 65 (D.D.C. 2006) (citations and

internal quotation marks omitted); see also Bloomgarden v. United States Dep't of Justice, 10 F.

Supp. 3d 146, 151 (D.D.C. 2014) (citing Oglesby v. Dep't of the Army, 920 F.2d 57, 61 (D.C.

Cir. 1990)) (exhaustion requirement gives agency opportunity to exercise discretion and

expertise and develop factual record to support its decision).

    More relevant for our purposes, a FOIA requester may not seek judicial review of an

agency's denial of a fee-waiver request until he administratively appeals the denial or pays the

assessed fee.  See Pruitt v. Executive Office for United States Attorneys, Dep't of Justice, No.

01-5453, 2002 WL 1364365, at *1 (D.C. Cir. Apr. 19, 2002); Trulock v. United States Dep't of

Justice, 257 F. Supp. 2d 48, 52-53 (D.D.C. 2003).  And courts typically stay judicial proceedings

pending the outcome of the administrative-appeal process out of concerns for maximizing

judicial economy.  See Lee v. United States Dep't of Justice, 235 F.R.D. 274, 284 (W.D. Pa.

2006) ("[I]t would maximize judicial economy for the parties to attempt to resolve these new

issues during the administrative appeal process before addressing them with the Court."); Dennis

v. CIA, No. 12-4207, 2012 WL 5493377, at *2 (E.D.N.Y. Nov. 13, 2012) ("[T]o the extent [the

plaintiff] seeks to argue that she constructively exhausted her administrative remedies because

the CIA and the DEA failed to decide her appeal within 20 days, her argument fails.  Both the

CIA and DEA indicate that [her] administrative appeals are being processed.").

    In this case, Bartko does not deny that his fee-waiver appeal is still pending, but he notes

an exception to the exhaustion requirement.  The "constructive-exhaustion" doctrine excuses a

plaintiff from exhausting administrative remedies prior to seeking judicial review where an

8

agency does not respond to a perfected FOIA request within the statutory twenty-day time limit.

In such an instance, the requester is deemed to have exhausted his administrative remedies and

may seek immediate recourse to the courts "to compel the agency's response to a FOIA request."

Oglesby, 920 F.2d at 64; Nurse v. Sec'y of the Air Force, 231 F. Supp. 2d 323, 328 (D.D.C.

2002). "Once constructive exhaustion occurs, any available administrative appeal – i.e., actual

exhaustion – becomes permissive in the sense in which the term is used here; the requester may

pursue it, but his failure to do so does not bar a lawsuit." Spannaus v. United States Dep't of

Justice, 824 F.2d 52, 58 (D.C. Cir. 1987) (citing 5 U.S.C. § 552(a)(6)(C)).

   Bartko's initial letter included a request both for documents and for a fee waiver. See

Letter of July 26, 2014. By the time he filed his Second Supplemental Complaint on December

16, 2014, more than two months had passed since OPR referred the 620 pages to EOUSA. See

Pl. Mot. at 7-8. EOUSA's failure to respond during that time means that Plaintiff constructively

exhausted his administrative remedies.

   Constructive exhaustion, it must be emphasized, does not entitle Bartko to free copies of

the remaining documents. Rather, it allows him judicial review of his fee-waiver request without

any requirement that he await the result of his administrative appeal. See Monaghan v. FBI, 506

F. App'x 596, 599 (9th Cir. 2013) (agency's failure to timely respond to fee-waiver request did

not excuse plaintiff from ultimate responsibility of paying assessed fees); Pollack v. Dep't of

Justice, 49 F.3d 115, 119-20 (4th Cir. 1995) ("Nowhere in the [FOIA] statute or in the

Department of Justice's regulations can we find a provision which states that when an agency

acts untimely, it is obliged to provide the requester with unlimited documentation free of charge.

On the contrary, fees are mandated in all but limited circumstances, see 28 C.F.R. § 16.10(a),

and payment may even be required <u>in advance</u> as a condition of further agency attention to the

request.") (emphasis in original).

The question thus remains: is a fee waiver warranted here?

2. *Fee Waiver*

Agencies are authorized to charge requesters fees to recover costs of processing FOIA

requests and to promulgate regulations outlining procedures and guidelines for charging those

fees.  <u>See</u> 5 U.S.C. § 552 (a)(4)(A)(i).  "Under well-established case law, fee waiver requests

must be made with 'reasonable specificity,' and based on more than 'conclusory allegations.'

[The Court is] also mindful that Congress amended FOIA to ensure that it be 'liberally construed

in favor of waivers for noncommercial requesters.'"  <u>Judicial Watch, Inc. v. Rossotti</u>, 326 F.3d

1309, 1312 (D.C. Cir. 2003) (internal citations omitted).  The requesting party bears the burden

of proof.  <u>See</u> <u>Citizens for Responsibility & Ethics in Washington v. United States Dep't of</u>

<u>Educ.</u>, 593 F. Supp. 2d 261, 268 (D.D.C. 2009) (citing <u>Larson v. CIA</u>, 843 F.2d 1481, 1483

(D.C. Cir. 1988)).

A reduction or waiver of fees is required where disclosure is in the "public interest

because it is likely to [1] contribute significantly to public understanding of the operations or

activities of the government and [2] is not primarily in the commercial interest of the requester."

5 U.S.C. § 552 (a)(4)(A)(iii).  Since EOUSA concedes that disclosure is <u>not</u> primarily in

Bartko's commercial interest, <u>see</u> Def. Mot. & Opp. at 10, the following "public understanding"

factors are all that are relevant:  (1) whether the records concern the operations or activities of

the government, (2) whether the disclosure is likely to contribute to an understanding of

government operations or activities, (3) whether disclosure will contribute to public

understanding, and (4) the significance of the contribution to increasing public understanding.

<u>See</u>  28 C.F.R. § 16.11(k)(2)(i)-(iv).  For a request to be in the "public interest," all four criteria

must be satisfied.  <u>See</u> <u>Marino v. Dep't of Justice</u>, 993 F. Supp. 2d 14, 20 (D.D.C. 2014) (citing

<u>Judicial Watch v. Dep't of Justice</u>, 365 F.3d 1108, 1126 (D.C. Cir. 2004)).

      In addition to these factors, the Court is also mindful of which arguments may properly

be considered at this stage.  In evaluating a fee-waiver claim, courts generally do not consider

arguments that an agency failed to make at the administrative level before the plaintiff brought

suit.  <u>See</u> <u>Bensman v. Nat'l Park Serv.</u>, 806 F. Supp. 2d 31, 37 (D.D.C. 2011).  As another court

in this district noted, however, that principle applies only where the plaintiff actually, and not

constructively, exhausted his administrative remedies.  <u>See</u> <u>Rosenberg v. United States Dep't of</u>

<u>Immigration & Customs Enforcement</u>, 954 F. Supp. 2d 1, 11 (D.D.C. 2013).  Where a plaintiff

constructively exhausts, an agency cannot be penalized for failing to make an argument in the

administrative process that never took place.  <u>See</u> <u>id.</u>  Because Plaintiff filed suit in reliance on a

constructive-exhaustion theory, therefore, the Court is not barred from considering the agency's

arguments made in this litigation, even though it did not raise these arguments in its initial denial

of the fee waiver.

      The parties primarily differ over the fourth regulatory factor, which states in full:

> The significance of the contribution to public understanding:
> Whether the disclosure is likely to contribute "significantly" to
> public understanding of government operations or activities.  The
> public's understanding of the subject in question, as compared to
> the level of public understanding existing prior to the disclosure,
> must be enhanced by the disclosure to a significant extent.
> Components shall not make value judgments about whether
> information that would contribute significantly to public
> understanding of the operations or activities of the government is
> "important" enough to be made public.

28 C.F.R. § 16.11(k)(2)(iv).  EOUSA concedes here that while Bartko has asserted at least a *de*

*minimis* "public interest in these records, he [also] makes it clear that they are sought to bolster

his *habeas* petition." Def. Mot. & Opp. at 10-11. As such, EOUSA points out, "Plaintiff [has] failed to establish how disclosure of the requested records would <u>significantly</u> contribute to the public's understanding of government operations or activities." <u>Id.</u> (emphasis added).

Bartko rejoins that the sought-after documents play an important role in furthering the public interest. He contends that the alleged prosecutorial misconduct in his case is part of a pattern of "shameful conviction[s]," and uncovering such conduct is in the public interest. <u>See</u> Pl. Opp. & Reply at 21. In his estimation, the potential <u>personal</u> benefit from receiving the documents is inconsequential: "The fact that those same records may assist [Plaintiff] in achieving exoneration from his conviction by supporting his habeas petition is of no great moment as long as there are public benefits to be gained as well." <u>Id.</u> at 22.

This disclaimer is unconvincing. As is evident from Plaintiff's filings, access to the records is "crucial" precisely because he seeks evidence to support his *habeas* petition. <u>See</u> Pl. Opp. & Reply at 21 n.5. While there may be incidental public-interest benefits to be gained, they are minimal in comparison to the unavoidably obvious personal purpose for which the records are sought. As the D.C. Circuit has generally held, a "focus on the ways in which the requested records allegedly will undermine [a] conviction and term of incarceration greatly undercuts the supposed benefit that will accrue to the <u>public</u> if the records are released." <u>Marino</u>, 993 F. Supp. 2d at 20 n.5 (emphasis in original); <u>see</u> <u>Ortloff v. Dep't of Justice & FBI</u>, No. 02-5170, 2002 WL 31777630, at *1 (D.C. Cir. Dec. 11, 2002) ("Insofar as appellant seeks information to facilitate a challenge to his conviction, the court considers disclosure less likely to contribute to public understanding.") (citations omitted); <u>Monroe-Bey v. FBI</u>, 890 F. Supp. 2d 92, 98 (D.D.C. 2012) ("Mr. Monroe-Bey's need for the records to prove his innocence – a theme throughout his fee waiver request – works against a fee waiver . . . ."); <u>see also</u> <u>Pub. Employees for Envtl.</u>

Responsibility v. United States Dep't of Commerce, 968 F. Supp. 2d 88, 101-04 (D.D.C. 2013)

(Plaintiff failed to satisfy second and fourth "public understanding" factors because

"[i]nformation related to one individual . . . is not likely to clear [the] bar [of increasing public

knowledge of the functions of government]."). The Court, therefore, finds that Bartko has not

established his entitlement to a "public interest" fee waiver.

### 3. Bad Faith

Plaintiff last argues that EOUSA is not entitled to summary judgment because it has acted

here in bad faith. While it is true that summary judgment for an agency may be inappropriate in

such an instance, see Hamilton Sec. Grp. Inc. v. Dep't of Hous. & Urban Dev., 106 F. Supp. 2d

23, 33 (D.D.C. 2000), aff'd sub nom. Hamilton Sec. Grp., Inc. v. Dep't of Hous. & Urban Dev.,

Office of Inspector Gen., No. 00-5331, 2001 WL 238162 (D.C. Cir. Feb. 23, 2001), it is less

clear that an agency's bad faith excuses a requester from paying fees. The Court will

nonetheless consider Bartko's arguments.

In determining what constitutes bad faith, "[c]ourts routinely find that delays in

responding to FOIA requests are not, in and of themselves, indicative of agency bad faith."

Skurow v. United States Dep't of Homeland Sec., 892 F. Supp. 2d 319, 326 (D.D.C. 2012) (one-

year delay insufficient for finding agency bad faith; claims of bad faith were purely speculative);

see also Boyd v. Criminal Div. of United States Dep't of Justice, 475 F.3d 381, 391 (D.C. Cir.

2007) (seven-month delay in responding to initial FOIA request did not, without additional

concrete allegations, constitute evidence of bad faith); Competitive Enter. Inst. v. Nat'l

Aeronautics & Space Admin., 989 F. Supp. 2d 74, 88-89 (D.D.C. 2013) (two-year delay caused

by inadequate staffing not caused by bad faith); Thomas v. United States Dep't of Justice, 531 F.

Supp. 2d 102, 109 (D.D.C. 2008) (three-year delay in agency's response to FOIA request not

"purposeful" and absent additional evidence did not indicate bad faith); <u>Goland v. CIA</u>, 607 F.2d

339, 355 (D.C. Cir. 1978) ("[I]n view of the well-publicized problems created by the statute's

10- and 20-day time limits for processing FOIA requests and appeals, the CIA's delay alone

cannot be said to indicate an absence of good faith.") (footnote omitted); <u>Fischer v. United States</u>

<u>Dep't of Justice</u>, 723 F. Supp. 2d 104, 108 (D.D.C. 2010) (rejecting argument that failure to

produce documents until after litigation commenced evinces bad faith).  Further, delays caused

by "simple" administrative mistakes – such as misplacement of documents during transfer

between agencies – do not constitute bad faith.  <u>See</u> <u>Budik v. Dep't of the Army</u>, 742 F. Supp. 2d

20, 33 (D.D.C. 2010).

 Plaintiff's contentious and lengthy Reply alleges numerous instances of bad faith on

EOUSA's part.  As will be readily apparent, Bartko generally views EOUSA's conduct as "only

explainable by an intent" to frustrate him and to avoid releasing the requested documents in a

timely manner.  <u>See</u> Pl. Opp. & Reply at 11.  The Court fundamentally disagrees.  EOUSA has

thus far made reasonable efforts to comply with FOIA and to respond to Plaintiff's farrago of

incendiary motions and correspondence.  Each of Bartko's allegations is addressed in turn.

 First, Plaintiff contends that EOUSA's February 9, 2015, letter is misleading insofar as it

(1) does not explicitly refer to the 930 pages that are the subject of the above-referenced

Motions, (2) does not state upon which FOIA exemptions EOUSA relied as a basis for redaction,

and (3) does not identify whether it is issued in response to the referral from OPR or to a separate

FOIA request served directly on EOUSA as the FOIA agent for the United States Attorney's

Office for the Eastern District of North Carolina.  <u>See</u> <u>id.</u> at 1-4.  To the extent Bartko complains

of confusion in interpreting this letter, he himself bears substantial responsibility as he has

inundated this Court and the responding Defendants with a truckload of lengthy motions,

correspondence, and overlapping FOIA requests, all of which are difficult to keep straight.  In

any event, he provides no legal support to demonstrate that any of this constitutes bad faith.

Second, Plaintiff claims that EOUSA released the initial 101 documents on February 9,

2015, only after his Motion for Partial Summary Judgment was filed on January 12.  See id. at 5-

7.  This is insufficient to manifest bad faith.  See Fischer, 723 F. Supp. 2d at 108 (rejecting

argument that failure to produce documents until after litigation commenced evinces bad faith).

Third, Bartko asserts that the agency turned over publicly available filings generated by

the parties in this FOIA suit, despite his request that such filings not be produced.  See Pl. Opp.

& Reply at 8.  This is unpersuasive.  Defendant has stated that it will make "every effort . . . to

the extent [it is] feasible" to exclude publicly available documents in the remaining document

production and remit any resulting overage of fees to Plaintiff.  See Luczynski Decl. at 3.  That it

has not fully succeeded is not bad faith.

Fourth, Plaintiff alleges EOUSA acted in bad faith by failing to waive its processing fees

and by offering an installment-payment plan that was excessive in light of his limited resources

as an indigent inmate.  See Pl. Opp. & Reply at 11.  The Court rejects this argument.  Bartko

characterizes fees as mere "technicalities," see id., but they are, in fact, required.  Pursuant to

DOJ regulations, an agency may require a requester "to make an advance payment of an amount

up to the amount of the entire anticipated fee before beginning to process the request . . . and it

'shall not' consider the request 'received' or perform 'further work' on it 'until the required

payment is received.'"  Bordas v. Dep't of Justice, 583 F. Supp. 2d 128, 132 (D.D.C. 2008)

(citing 28 C.F.R. § 16.11(i)(2), (4)); see also Farrugia v. Executive Office for United States

Attorneys, 366 F. Supp. 2d 56, 57 (D.D.C. 2005) ("Where an agency already has processed a

request, it is clear 'that the agency may require payment before sending the requested records.'")

(internal citation omitted).  Requiring Plaintiff to pay the assessed fees (absent a waiver) – particularly in installments – does not amount to bad faith.

Finally, Bartko maintains that EOUSA used bureaucratic technicalities and other stalling methods to intentionally drag its feet in responding to his request.  <u>See</u> Pl. Opp. & Reply at 11-12.  While this last argument carries more weight than any of his previous protestations, it similarly falls short.  As noted above, while Defendant is not faultless for the delay in processing and releasing the <u>initial</u> batch of documents, mere delay in responding to a FOIA request is routinely found to be insufficient to support a finding of bad faith, even in cases where the agency delay is considerably longer than EOUSA's present delay of several months.  <u>See</u> <u>Skurow</u>, 892 F. Supp. 2d at 326 (one year); <u>Boyd</u>, 475 F.3d at 391 (seven months); <u>Competitive Enter. Inst.</u>, 989 F. Supp. 2d at 88-89 (two years); <u>Thomas</u>, 531 F. Supp. 2d at 109 (three years).  This is particularly the case where, as here, at least some of the delay was caused by the "simple administrative error" of the documents being lost or misplaced in the referral process.  <u>See</u> <u>Budik</u>, 742 F. Supp. 2d at 33 n.17 (ten-month delay caused by misdirected documents in referral process did not indicate bad faith).

Plaintiff's allegations of bad faith, whether viewed singly or in concert, are misguided.

## IV.   Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order denying Plaintiff's Motion for Partial Summary Judgment, granting Defendant's Motion for Partial Summary Judgment with respect to redactions made in the initially released documents, and granting Defendant's Motion to Dismiss the remaining claims for failure to pay required fees.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>May 6, 2015</u>

16