## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY BARTKO,

      Plaintiff,

       v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

      Defendants.

Civil Action No. 13-1135 (JEB)

### MEMORANDUM OPINION

Plaintiff Gregory Bartko, currently serving a 23-year prison sentence for securities fraud, is seeking to exonerate himself by proving prosecutorial misconduct.  To that end, he has brought this *pro se* suit under the Freedom of Information Act against many Department of Justice components, including the Office of Professional Responsibility.  This Court has already issued several other Opinions discussing the merits of related FOIA requests in this case.  See, e.g., Bartko v. Dep't of Justice, No. 13-1135, 2015 WL 513272 (D.D.C. Feb. 9, 2015).  This Opinion addresses the latest dispute between Bartko and OPR.

In seeking summary judgment, OPR asserts that it has released all of the responsive documents that Plaintiff is entitled to receive and has properly withheld others pursuant to certain FOIA exemptions.  Bartko, conversely, believes that he is entitled to summary judgment and requests that the Court compel the agency to release all withheld records.  The Court sides with OPR.

## I.      Background

As a prior Opinion set forth in some detail the factual background of this suit, see Bartko

v. Dep't of Justice, 62 F. Supp. 3d 134, 138-40 (D.D.C. 2014), the Court will now describe only

those events that directly relate to the present Cross-Motions.

In early 2013, Plaintiff submitted FOIA requests to no fewer than seven federal agencies

and components, seeking information relating to his prosecution so that he could file a *habeas*

petition.  See id. at 139.  Dissatisfied with the substantive responses and lack of promptness

displayed by the government, he brought suit in this Court.  Two years and countless rounds of

briefing later, Plaintiff and the Defendant agencies have finally begun to narrow their

disagreements concerning those agencies' compliance – or lack thereof – with FOIA.

OPR, the Defendant agency at issue here, initially resisted disclosure when responding to

Bartko's request; in fact, it issued a Glomar response, thereby refusing to confirm or deny the

existence of the documents that Plaintiff sought.  See id. at 141-44; Phillippi v. CIA, 546 F.2d

1009, 1011-13 (D.C. Cir. 1976) (explaining that Glomar responses are exceptions to general rule

that agencies must acknowledge the existence of responsive information and explain why it has

been withheld).  Finding this response inappropriate, the Court, on August 5, 2014, required

OPR to search for records relating to its then-ongoing investigation into Assistant U.S. Attorney

Clay Wheeler, the lead prosecutor in Bartko's criminal trial.  See Bartko, 62 F. Supp. 3d at 144.

To comply with that order, OPR conducted a search later that month and identified 441 pages of

responsive documents.  See Mot., Exh. 1 (Fourth Declaration of Ginae Barnett), ¶¶ 3-11.

Because the investigation into Wheeler was still ongoing at that time, the agency experienced

some delays in processing the records; the Court consequently gave OPR until the end of January

2015 to complete the task.  See ECF No. 124 (Order of December 11, 2014) at *2-3.

Having processed these 441 pages of records, OPR produced to Plaintiff one page in full and 12 in part, with redactions made pursuant to various FOIA exemptions.  See Fourth Barnett Decl., ¶ 8.  It also withheld in full 102 pages and provided a Vaughn Index specifying which exemptions it relied upon in these 114 total pages.  See id., Tab D; see also Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (establishing practice of using the now-named Vaughn Index).  Finally, OPR referred six pages to the Office of the Inspector General and 320 pages to the Executive Office of U.S. Attorneys.  See Fourth Barnett Decl., ¶¶ 8-11.

 Now that it has produced some records, withheld others, and referred the bulk of them to other components, OPR believes that it has satisfied its FOIA obligations and seeks summary judgment.  Bartko, by contrast, believes that he is entitled to summary judgment and moves to compel the release of all of the withheld documents.  After reviewing the briefing in the case, the Court ordered OPR to provide the 114 disputed pages to the Court for in camera review.  See Minute Order of June 30, 2015.  The agency complied, and the Court has now reviewed all of the documents.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).  Factual assertions in the

moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (citation omitted).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for the Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

**III.   Analysis**

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against

corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 754-55. "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Although the parties' Cross-Motions are, at times, difficult to follow inasmuch as they often talk past each other, the Court can discern two separate issues: (1) whether only 114 pages (or some larger number) are in dispute and (2) the propriety of the withholdings on these pages. The Court will address the issues separately, noting first that Bartko does not dispute the adequacy of OPR's search, but only its withholdings.

A.   Scope of Dispute

The parties cannot agree on which documents are at issue in this round of briefing, but they have identified four potential categories:

- 102 pages withheld in full (plus an additional twelve withheld in part), located in response to FOIA request F13-00032. See Def. Opp. & Reply at 3; Fourth Barnett Decl., ¶¶ 8-14;
- 320 pages referred by OPR to EOUSA, located in response to FOIA request F13-00032. See Pl. Cross-Mot. & Reply, Exh. 3 (Plaintiff's Letter of December 26, 2014) at 1-2;
- 610 pages referred by OPR to EOUSA, located in response to FOIA request F14-00098. See id.; Def. Opp. & Reply at 2-3;

- 166 pages, whose whereabouts are currently unknown, located in response to FOIA request F14-00098.  See Pl. Cross-Mot. & Reply at 7; Def. Opp. & Reply at 3.

Although Bartko and OPR, thankfully, concur that the propriety of the withholdings for the first set of documents – the 114 pages withheld in full or in part – is currently before the Court, they part ways as to whether the remaining categories are properly the subject of these Motions.

The second and third batches – collectively 930 pages – were referred by OPR to EOUSA pursuant to DOJ regulation, which provides:

> When the component processing the request believes that a different component, agency, or other Federal Government office is best able to determine whether to disclose the record, the component typically should refer the responsibility for responding to the request regarding that record, as long as the referral is to a component or agency that is subject to the FOIA.  Ordinarily, the component or agency that originated the record will be presumed to be best able to make the disclosure determination.

28 C.F.R. § 16.4(d)(2)(i).

The third batch (610 pages) was the subject of the parties' dispositive briefing and this Court's Opinion of May 6, 2015.  See Bartko v. Dep't of Justice, No. 13-1135, 2015 WL 2091229, at *7 (D.D.C. May 6, 2015).  The Court there found that Plaintiff was not entitled to a "public interest" fee waiver, and it thus required Bartko to pay the fees assessed by EOUSA or forgo his quest for the records.  See id. at *5-7.  As the Court has already ruled on this group of documents, Plaintiff is not entitled to another bite at that apple.

The second batch (320 pages) was not a topic of that prior Opinion.  This is because the Court's Order of December 11, 2014, see ECF No. 123, permitted Plaintiff to amend his Complaint against EOUSA only with respect to the 610-page referral from OPR and not any

other claim.  The 320-page batch, consequently, is not a subject of the operative Second Amended Complaint and is thus not properly before the Court.

The fourth batch of documents, consisting of 166 pages of records, is the least clearly briefed by the parties.  Fortunately, the Court need not delay resolution of these Motions on this account.  As previously explained, these pages of records were located in response to FOIA request F14-00098, which Bartko submitted directly to OPR on July 26, 2014.  See Pl. Cross-Mot. & Reply, Exh. 2 (OPR's Letter of September 10, 2014) at 1.  These records were not referred to another component or agency, but rather were withheld in full pursuant to Exemption 5.  See id.  The Court, as just mentioned, permitted Plaintiff to supplement his Complaint only against EOUSA and only with respect to the 610 pages that OPR had referred to EOUSA as part of processing that request.  See ECF No. 123 (Order of December 11, 2013) at 3.  He was also advised then that he could bring another suit against OPR designated as "related" to this case, advancing any other claims arising out of this later July 2014 FOIA request.  See id.  Having failed to do as the Court ordered, it is unclear on what basis he now seeks relief.

The Court, in sum, will only address the first category of documents that the parties have agreed is the subject of these Cross-Motions – 114 pages in total.

B.  Exemptions 6, 7(C)

OPR relied on Exemptions 6 and 7(C) to withhold information contained on numerous pages throughout the 114-page batch.  See Fourth Barnett Decl., ¶¶ 23-27.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . .

7

could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the

privacy interests that would be compromised by disclosure against the public interest in release

of the requested information." Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993)

(quoting Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same

weighing of interests, the balance tilts more strongly toward nondisclosure in the context of

Exemption 7(C) because its "privacy language is broader than the comparable language in

Exemption 6 in two respects." Reporters Comm., 489 U.S. at 756. First, Exemption 6

encompasses only "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the

adverb "clearly." See id. Second, Exemption 6 prevents disclosures that "would constitute" an

invasion of privacy, while Exemption 7(C) targets any disclosures that "could reasonably be

expected to constitute" such an invasion. Id. Both differences are the result of specific

amendments, reflecting Congress's conscious choice to provide greater protection to law-

enforcement materials than to personnel, medical, and other similar files. See id. This Circuit

has accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than

Exemption 6. See ACLU v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997

F.2d at 1491.

If the withheld records were "compiled for law enforcement purposes," the Court need

only address whether the agency has properly withheld these documents under Exemption 7(C),

and there is no requirement to consider the higher bar of Exemption 6. In determining if the

records were compiled for such purposes, "the focus is on how and under what circumstances the

requested files were compiled, and whether the files sought relate to anything that can fairly be

characterized as an enforcement proceeding." Jefferson v. Dep't of Justice, Office of Prof'l Responsibility, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (internal quotation marks and citations omitted). The court in Jefferson, furthermore, noted that "if [an] investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees." Id. at 177.

The D.C. Circuit has previously held that OPR records relating to the investigation of an AUSA are compiled for law-enforcement purposes. In Kimberlin v. Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998), an AUSA was accused of improperly disseminating information about a DEA investigation, and the court found that OPR records relating to an investigation of that incident were compiled for such purposes. The facts there are markedly similar to those here. Both cases deal with an OPR investigation of an AUSA that was "conducted in response to and focused upon [alleged wrongdoing] by a particular, identified official." Id. at 947. The records here, moreover, were not "maintained in the course of general oversight of government employees." Jefferson, 284 F.3d at 177; see also Kimberlin, 139 F.3d at 947 ("The investigation was not aiming generally . . . to insure that [the agency's] employees are acting in accordance with statutory mandate and the agency's own regulations.") (second alteration in original). They were, rather, compiled for the purpose of investigating AUSA Wheeler and his potential civil and criminal liability. See Fourth Barnett Decl., ¶ 18; Def. Opp. & Reply at 8. Although Plaintiff is correct that OPR has a dual law-enforcement and routine-oversight mission, the records that Bartko seeks were clearly compiled to investigate possible violations of law.

This threshold question answered, the first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought. See ACLU, 655 F.3d at 6. To constitute a privacy interest under FOIA, the claimed interest must be

"substantial."  Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (discussing issue in depth). "[S]ubstantial," however, "means less than it might seem.  A substantial privacy interest is anything greater than a *de minimis* privacy interest."  Multi Ag Media, 515 F.3d at 1229-30.

In the context of Exemption 7(C), it is well established that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."  Stern v. FBI, 737 F.2d 82, 91-92 (D.C. Cir. 1984); see also Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) ("It is surely beyond dispute that 'the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.'") (quoting Branch v. FBI, 658 F. Supp. 204, 209 (D.D.C. 1987)); Nation Magazine, Wash. Bureau v. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995) ("[I]ndividuals have an obvious privacy interest . . . in keeping secret the fact that they were subjects of a law enforcement investigation.").  This privacy interest is strongest where the individuals in question "have been investigated but never publicly charged at all."  ACLU, 655 F.3d at 7.

The Court must nevertheless bear in mind that AUSA Wheeler was a public official, who, by definition, "may not have as great a claim to privacy as that afforded ordinarily to private citizens."  Lesar v. Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980). "[T]he level of responsibility held by a federal employee" and the type of wrongdoing committed by that employee "are appropriate considerations" in the privacy analysis.  See Stern, 737 F.2d at 92 ("There is a decided difference between knowing participation by a high-level officer in such deception and the negligent performance of particular duties by the two other lower-level employees.").

Given the public-accountability purposes of FOIA, affording high-level public officials lesser privacy interests is logical, as their conduct and mistakes shed light on official government positions.  See id.; McMichael v. Dep't of Defense, 910 F. Supp. 2d 47, 53 (D.D.C. 2012) (Captain and Director of Logistics in U.S. Strategic Command had "leadership responsibilities" and thus possessed diminished privacy interests).  The actions or misconduct of lower-level public officials, such as staff attorneys, by contrast, reveals little about the government's operations.  See, e.g., Kimberlin, 139 F.3d at 949 (staff-level AUSA maintained privacy interest); Jefferson, 284 F.3d at 180 (same); Am. Immigration Lawyers Ass'n v. Executive Office for Immigration Review, No. 13-840, 2014 WL 7356566, at *5 (D.D.C. Dec. 24, 2014) (immigration judges maintain substantial privacy interests as they are "unionized, non-supervisory career civil servants selected through competitive vacancy announcements, as opposed to political appointees or senior managers"); Trentadue v. Integrity Comm., 501 F.3d 1215, 1234-36 (10th Cir. 2007) (disclosure of names of "low-level employee[s] who committed serious acts of misconduct . . . would shed little light on the operation of the government").

On the Goliath-sized totem pole of government bureaucracy, AUSA Wheeler falls between a staff-level career civil servant and a political appointee or senior manager. As Chief of the Economic Crimes Division of the USAO for the Eastern District of North Carolina, he presumably exercised some degree of supervisory authority greater than the ordinary line prosecutor.  This authority, nonetheless, does not approach that exercised by political appointees or senior managers.  To the extent that Wheeler generally possessed some degree of supervisory authority, moreover, his actions of issue were primarily taken in the capacity of a line prosecutor who tried Bartko's case.  Choosing between the two ends of the supervisory spectrum, then, his job position is thus best classified – for the purposes of his privacy interests – as a staff attorney.

Having not been publicly charged with any crime, therefore, Wheeler maintains a significant privacy interest in not having the contents of an OPR investigation divulged to the public.

The Court must now balance this substantial privacy interest against the public interest in releasing the records.  In this analysis, the public interest is limited to FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties."  Reporters Comm., 489 U.S. at 773.  Courts, moreover, must distinguish between the public interest that can generally exist in a subject that relates to a FOIA request, and the public interest that might or might not be served by disclosure of the specific records that are responsive to a given request.  See Elec. Privacy Info. Ctr. v. Dep't of Defense, 355 F. Supp. 2d 98, 102 (D.D.C. 2004) (noting that the fact that a plaintiff has provided evidence "that there is some media interest in data mining as an umbrella issue does not satisfy the requirement that Plaintiff demonstrate interest in the specific subject of Plaintiff's FOIA request").  The key consideration is whether disclosure of the records at issue would serve an identified public interest and therefore warrant the overriding of personal privacy.  See Lopez v. EOUSA, 598 F. Supp. 2d 83, 89 (D.D.C. 2009) (holding that EOUSA's Vaughn Index demonstrates that disclosure of the particular information withheld "is not likely to advance any significant public interest, even if the plaintiff could establish that the public has a significant interest in the material he is seeking"); but see Judicial Watch, Inc. v. U.S. Secret Serv., 579 F. Supp. 2d 151, 154 (D.D.C. 2008) (holding that disclosure of names of individuals requesting White House access for visitors was not precluded under [Exemption 7(C)] because the names would shed light on why the visitor came to the White House).  Finally, courts routinely refuse to recognize any public interest in the disclosure of records that are sought to assist someone who is challenging his conviction.  See Dep't of Justice Guide to the Freedom of

Information Act at 586 (2009 ed.) (collecting cases), available at

http://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption7c_0.pdf.

Here, Plaintiff repeatedly harps upon the general public interest in exposing prosecutorial

misconduct – an undeniably serious issue – but there is no indication that the specific records he

sought would reveal anything about the inner workings of DOJ or prosecutorial misconduct

generally.  The Court's in camera review, moreover, confirms that the records contain absolutely

no such information, but rather pertain to OPR's evaluation of AUSA Wheeler's conduct, its

handling of the Wheeler investigation, the sources of information it relied upon in conducting

this investigation, and potential consequences of the investigation.  See also Fourth Barnett

Decl., ¶¶ 23-27.  None of these specific records would reveal much, if anything, about systemic

prosecutorial misconduct such that any public interest in release would outweigh AUSA

Wheeler's substantial privacy interests.  Bartko, lastly, invokes comparisons between his

conviction and the prosecution of Senator Ted Stevens, see Pl. Cross-Mot. & Reply at 24, but the

Court agrees with Plaintiff's concession that the two are of categorically distinct levels of public

importance.  See id.  OPR thus properly withheld the records under Exemption 7(C).

C.  Exemption 5

In addition to Exemption 7(C), OPR applies Exemption 5 to approximately twenty

specific documents, which the Court has also reviewed in camera.  FOIA Exemption 5 applies to

"inter-agency or intra-agency memorandums or letters which would not be available by law to a

party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Withholdings

are restricted to "those documents, and only those documents, normally privileged in the civil

discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United

States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984). Exemption 5 encompasses three

distinct components – namely, the deliberative-process privilege (sometimes referred to as "executive privilege"), the attorney work-product privilege, and the attorney-client privilege. See Am. Immigration Council v. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012).  The first two are at issue here.

The deliberative-process privilege exempts from disclosure "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, Roebuck & Co., 421 U.S. at 150.  It is intended "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 9 (2001) (internal quotation marks and citations omitted).  The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id. at 8-9; see also Dow Jones & Co. v. Dep't of Justice, 917 F.2d 571, 573-74 (D.C. Cir. 1990).  To fall under the protection of the deliberative-process privilege, withheld material must be both "predecisional" and "deliberative." Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  Material is "predecisional" if it was "generated before the adoption of an agency policy." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  It is "deliberative" if it "reflects the give-and-take of the consultative process." Id.

The attorney work-product privilege, conversely, extends to "documents and tangible things that are prepared in anticipation of litigation or for trial" by an attorney.  Fed. R. Civ. P. 26(b)(3)(A).  As this Court has noted in the past, the privilege is relatively broad, encompassing documents prepared for litigation that is "foreseeable," if not necessarily imminent. See Am. Immigration Council, 905 F. Supp. 2d at 221.  The privilege is not boundless, however:

> While it may be true that the prospect of future litigation touches virtually any object of a [law-enforcement agency] attorney's attention, if the agency were allowed "to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated."

Senate of the Com. of Puerto Rico ex rel. Judiciary Comm. v. Dep't of Justice, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (quoting Coastal States Gas Corp., 617 F.2d at 865).  When reviewing a withholding under the work-product prong, the "'testing question' . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (emphasis added) (quoting Senate of the Com. of Puerto Rico, 823 F.2d at 586 n.42).  At a minimum, the government must demonstrate that the lawyer who prepared the document possessed the "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  Id.

Here, OPR properly withheld records OPR-9, OPR-25, OPR-29, OPR-32, OPR-33, and OPR-35 under the attorney work-product privilege.  See Fourth Barnett Decl., ¶ 22.  The Court's in camera review reveals that these records consist of emails from or to OPR attorneys or at their instruction discussing the impact of a certain issue on the pending FOIA litigation.  The release of this information would reveal the mental processes of the attorneys involved in this litigation. See Citizens For Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin., 583 F. Supp. 2d 146, 158-60 (D.D.C. 2008) (attorney work-product doctrine protects documents prepared in course of different pending FOIA litigation).  The privilege, consequently, was properly invoked.

Defendant also properly withheld certain emails between OPR attorneys under the deliberative-process privilege.  Those emails – OPR-3, OPR-7 through -10, OPR-25, OPR-26, OPR-29 through -36, and OPR-37 – contained deliberations relating to how OPR would proceed in the investigation of AUSA Wheeler.  See Fourth Barnett Decl., ¶¶ 20-21.  They are, as Defendant asserts, predecisional and deliberative because they reflect OPR's decisionmaking process in how to resolve the Wheeler investigation.  See id., ¶ 21.  The release of this information could stifle frank and open discussion between OPR employees.  See Klamath Water Users Protective Ass'n, 532 U.S. at 9.  Portions of those emails also deal with the impact of the investigation on this pending FOIA litigation.  See also Citizens For Responsibility & Ethics in Washington, 583 F. Supp. 2d at 162.

Plaintiff nonetheless maintains that the deliberative-process privilege is inapplicable because of the so-called government-misconduct exception, under which he must "provide an adequate basis for believing that [the documents] would shed light upon government misconduct."  Hall & Associates v. Envtl. Prot. Agency, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) (alteration in original) (internal quotations and citations omitted); see Pl. Cross-Mot. & Reply at 11-12.

This exception, as an initial matter, is construed very narrowly and applies only in cases of extreme government wrongdoing.  See Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 903 F. Supp. 2d 59, 66-68 (D.D.C. 2012); see also Neighborhood Assistance Corp. of Am., v. Dep't of Hous. & Urban Dev., 19 F. Supp. 3d 1, 14 (D.D.C. 2013) (citing cases in this district recognizing "a similarly high benchmark [of] . . . nefarious or extreme government wrongdoing").  It is not clear that Plaintiff's allegations clear this rather high threshold, but, in any event, in camera review of the documents reveals that they "do not reflect any governmental

16

impropriety, but rather are part of the legitimate governmental process [conducted by OPR] intended to be protected by Exemption 5." Nat'l Whistleblower Ctr., 903 F. Supp. 2d at 68 (internal quotation marks and citation omitted).

      D.  Segregability

      Finally, the Court must consider whether there are any reasonably segregable portions of the information that should be released.  See 5 U.S.C. § 552(b); see also Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999) (courts have *sua sponte* obligation to consider segregability).  In order to be considered reasonably segregable, the information, if disclosed, must have some meaning.  See Mead Data Ctr., Inc. v. Dep't of the Air Force, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977) ("A court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases or even sentences which taken separately or together have minimal or no information content."); Nat'l Sec. Archive Fund, Inc. v. CIA, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (finding no reasonably segregable information existed because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words") (internal quotation and citation omitted).  The Court's *in camera* review reveals that the record contains many similar fragments of information, the release of which would carry no informational value.  Segregability is thus not required.

**IV.    Conclusion**

      For the foregoing reasons, the Court will issue a contemporaneous Order denying Plaintiff's Motion for Summary Judgment and granting Defendant's.

                          /s/ *James E. Boasberg*
                          JAMES E. BOASBERG
                          United States District Judge

Date:  August 18, 2015