UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GREGORY BARTKO,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, *et al.*,<br><br>    Defendants. | Civil Action No. 13-1135 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Gregory Bartko is currently serving a 23-year prison term for conspiracy, mail fraud, and selling unregistered securities. Motivated by the belief that Clay Wheeler, one of the Assistant U.S. Attorneys who helped secure his conviction, withheld evidence crucial to his defense, Bartko filed Freedom of Information Act requests to numerous federal agencies asking for, among other things, records of Wheeler's investigatory efforts and documents concerning Bartko and his case.

Although Congress's express purpose in passing FOIA was "to clarify and protect the right of the public to information," Pub. L. 89-487, 80 Stat. 250 (July 4, 1966) (emphasis added), it has since become a widely used tool for prisoners seeking to challenge their sentences, forcing federal agencies "at enormous cost to American taxpayers . . . to respond to requests for information that the agencies may or may not possess." Charles J. Wichmann III, Ridding FOIA of Those "Unanticipated Consequences": Repaving a Necessary Road to Freedom, 47 Duke L.J. 1213, 1216 (1998). This case epitomizes these concerns: Bartko's FOIA litigation has implicated no fewer than seven federal agencies, including the Department of Justice, DOJ's

Office of Professional Responsibility, the Federal Bureau of Investigation, the United States

Postal Inspection Service, and the United States Securities and Exchange Commission, and has

required detailed briefing from all of these entities.  The present dispute concerns his requests to

the FBI and follows a prior Opinion issued by this Court last August.  After several years of back

and forth, the parties have filed Cross-Motions for Summary Judgment over the remainder of

FBI records sought by Bartko, and the Court now resolves their outstanding disagreements.

## I.      Background

This is hardly this Court's first Opinion concerning Bartko's quest for records from a

half-dozen federal agencies.  See, e.g., Bartko v. Dep't of Justice, 102 F. Supp. 3d 342 (D.D.C.

2015); Bartko v. Dep't of Justice, 79 F. Supp. 3d 167 (D.D.C. 2015); Bartko v. Dep't of Justice,

No. 13-1135, 2015 WL 4932122 (D.D.C. Aug. 18, 2015).  Nor is it even the Court's first effort

to tackle Bartko's FOIA requests of the FBI.  See Bartko v. Dep't of Justice, 62 F. Supp. 3d 134

(D.D.C. 2014).  As such, the Court will not recite the facts of this matter at length.  Suffice it to

say that Bartko was formerly a successful securities lawyer, investment banker, and broker who

was convicted of six counts of fraud and other securities violations and sentenced to 272 months

in prison in 2010.  See id. at 138-40.  While incarcerated, he has submitted FOIA requests to

myriad federal agencies, including the FBI.  From the Bureau, Bartko seeks records regarding

himself, three of his co-conspirators and their corporate alter egos, and one other witness, hoping

principally to demonstrate prosecutorial misconduct.  See id. at 139.

In the case of the records Bartko has sought from the FBI, the parties have engaged in

rounds of FOIA correspondence, culminating in refusals as well as releases of responsive

documents.  When the Court last encountered these parties, it ordered the FBI to "search for

documents relating to Bartko's three co-conspirators and process the two CDs and one flash

drive" in question in that decision.  See Bartko, 62 F. Supp. 3d at 149.  Having done so, the FBI

then reviewed 1,233 pages of relevant records, which are labeled "Bartko" pages 1 through

1,233, releasing 1,099 in full or in part.  See Def. MSJ (ECF No. 180) at 7.  The other 134 pages

were withheld in full, and included in the final release was a Vaughn Index of withheld

documents setting forth a description of them and the FOIA exemption(s) cited as the basis for

each withholding.  See id.; see also Def. Exh. Y (ECF No. 175-2) (Vaughn Index).  The FBI also

withheld the thumb drive and two CDs on the ground that the records contained therein reveal

matters occurring before a grand jury, as they were provided to a federal grand jury in response

to a subpoena.  See Def. MSJ at 19 (citing Exh. 1 (Second Decl. of David M. Hardy), ¶ 54).  The

Bureau now seeks summary judgment, arguing that its search for records was adequate, its FOIA

processing was proper, and the withholding of records was in accordance with law.  See Def.

MSJ at 1.  Bartko opposes, and also filed a Cross-Motion for Summary Judgment.  See ECF No.

182.  To aid its determination, the Court recently ordered *in camera* production of most of the

withheld records, as well as some of the partially redacted records Bartko challenged.  See

Minute Order of Nov. 23, 2015; Order of Dec. 1, 2015 (ECF No. 220).  That review is now

complete.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment.

See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a

court may grant summary judgment based solely on information provided in an agency's

affidavits or declarations when they "describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)

(citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith,

which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal

quotation marks omitted).  "Unlike the review of other agency action that must be upheld if

supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the

burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter

de novo.'"  Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755

(1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.    Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . .  shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions.  See 5 U.S.C. § 552(b); Rose, 425 U.S. at 361.  Consistent with this statutory mandate, federal courts possess jurisdiction to order the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(4)(B); Reporters Comm. for Freedom of the Press, 489 U.S. at 755.

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Here, Bartko raises four challenges to the exemptions relied on by the FBI to withhold and redact records.  First, he argues that the Bureau's "withholding all of the records and information contained" on the thumb drive and CDs "constitutes an improper categorical refusal

to search and process responsive records and results in a withholding of non-exempt records and information . . . ."  Pl. MSJ at 2, ¶ 1.  Second, he asserts that, with respect to the documents the FBI withheld under Exemptions 6 and 7(C), the public interest in these documents outweighs the privacy interests justifying their withholding.  See id., ¶ 2.  Third, and relatedly, he claims that the government's "authorized release of third party records which are now in the public domain" vitiates the FBI's Exemption 6 and 7(C) rationales.  See id., ¶ 3.  Finally, Plaintiff challenges certain records withheld under FOIA Exemptions 7(D) and 7(E), arguing that "the FBI has wholly failed to demonstrate that its claims of exemption . . . are valid justifications for withholding the records."  Id.  The Court addresses each of these issues in turn, tackling the second and third objections to Exemptions 6 and 7(C) together.

A.  Exemption 3

Defendant cites Exemption 3 as the basis for withholding the thumb drive and the two CDs, as well as records numbered Bartko pages 80, 751-760, 1015.  As pages 751-60 and 1015 are properly exempt under Exemption 7(C), as discussed below, see infra Section III.B, the Court need not undertake any analysis of Exemption 3's applicability to them.  See, e.g., Simon v. Dep't of Justice, 980 F.2d 782, 784-5 (D.C. Cir. 1992) (affirming withholding of records based on one FOIA exemption and declining to address any other).  In addition, in camera review has manifested that the CDs are merely copies of the thumb drive.  The Court, accordingly, considers only the thumb drive and page 80 under Exemption 3.

Exemption 3 covers records "specifically exempted from disclosure by statute" provided that such statute either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  The relevant

statute here – Federal Rule of Criminal Procedure 6(e) – bars the disclosure of matters occurring before a grand jury.  See Fed. R. Crim. P. 6(e)(2)(B).  Because it was affirmatively enacted by Congress, Rule 6(e) is recognized as a "statute" for Exemption 3 purposes.  See Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv., 656 F.2d 856, 867 (D.C. Cir. 1981). The Rule's grand-jury-secrecy requirement is applied broadly and embraces any information that "tend[s] to reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  Lopez v. Dep't. of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (citation and internal quotation marks omitted).  With exceptions that do not apply here, Rule 6 is "quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule," and "the rule's ban on disclosure is for FOIA purposes absolute and falls within . . . Exemption 3."  Fund for Constitutional Gov't., 656 F.2d at 868.

Bartko objects to the FBI's claiming Exemption 3 "as the basis for withholding all of the records and information contained on those digital media," arguing that doing so is "contrary to this Circuit's interpretation of the scope" of that exemption, since it is a "categorical refusal to search and process responsive records."  Pl. MSJ at 1-2, ¶ 1.  More specifically, he alleges that the FBI has not even informed him "whether there are two pages of records or two-thousand pages of records" on the thumb drive.  See id. at 6.  He argues that Exemption 3 and the grand-jury-secrecy rule "do not permit an agency to categorically withhold responsive records by asserting an exemption to an entire set of documents that may in some manner be connected to a grand jury."  Id. at 7.

It is true that in this Circuit, "[w]e have never embraced a reading of Rule 6(e) so literal as to draw 'a veil of secrecy . . . over all matters occurring in the world that happen to be

investigated by a grand jury.'"  <u>Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm.</u> <u>v. Dep't of Justice</u>, 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting <u>SEC v. Dresser Industries, Inc.</u>, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (*en banc*)).  Instead, "the touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation [including] such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  <u>Id.</u> (citation and internal quotation marks omitted).  Nevertheless, "this Court need not evaluate the revelatory characteristics of every individual document in each case before it. As the Supreme Court suggested, 'categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction.'"  <u>Lopez</u>, 393 F.3d at 1349 (quoting <u>Reporters Committee</u>, 489 U.S. at 776).

The FBI draws on this reasoning in its refusal to inform Bartko about the contents of the thumb drive.  The Bureau contends that it is not categorically refusing to search and process responsive records, but rather is purposefully not describing their contents because even revealing the number of documents on the thumb drive might make its contents, and information about private individuals, identifiable.  <u>See</u> Second Hardy Decl., ¶ 54.  As FBI Agent David M. Hardy avers:

> The only information contained on the thumb drive and CDs are the evidentiary documents collected for use in the investigation per the subpoena.  Any disclosure of the information contained on these items, including the very volume of information sought by the Grand Jury, would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a federal grand jury . . . .

<u>Id.</u>  To determine the appropriateness of this course of action, the Court requested the contents of the thumb drive to view *in camera*, along with the Computer Analysis Response Team (CART)

report concerning those items.  See Minute Order of Nov. 23, 2015.  Having reviewed the contents, the Court is satisfied that the records were properly withheld as containing information about the names of recipients of federal grand-jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand jury in response to such a subpoena.  See Second Hardy Decl., ¶ 54.  In light of this, the FBI appropriately declined to articulate the precise contents of the thumb drive so as to avoid "reveal[ing] statutorily protected Federal Grand Jury information."  Def. Opp. at 2.

Finally, although the FBI asserts only Exemption 3 in withholding the record numbered Bartko page 80, the Court has reviewed this document in camera and does not see how, absent some other explanation, it is properly withheld under that exemption — particularly as the other pages of the document do not appear to have been withheld.  While other exemptions might appropriately justify the FBI's withholding — Exemption 7(C), for example — since it has only claimed Exemption 3 and that exemption does not seem appropriate here, the Court will order that this record be released.

    B.  Exemptions 6 and 7(C)

Plaintiff next challenges the FBI's withholding of certain documents or portions of documents under FOIA Exemptions 6 and 7(C).  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by

disclosure against the public interest in release of the requested information." Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

Although both exemptions require agencies and reviewing courts to undertake the same weighing of interests, the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." Reporters Comm., 489 U.S. at 756. First, while Exemption 6 encompasses "clearly unwarranted" invasions of privacy, Exemption 7(C) omits the adverb "clearly." See id. Second, Exemption 6 prevents disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be expected to constitute" such an invasion. See id. Both differences are the result of specific amendments reflecting Congress's conscious choice to provide greater protection to law-enforcement materials than to personnel, medical, and other files. See id. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. ACLU v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993). As a result, if the records and information Defendants seek to withhold in this case were "compiled for law enforcement purposes," the Court need only address whether the agency has properly withheld these documents under Exemption 7(C), and there is no need to consider the higher bar of Exemption 6.

The Court here adopts a divide-and-conquer strategy, first assessing whether the documents in question were produced for law-enforcement purposes, then weighing the privacy and public interests, and finally determining whether the public-domain-doctrine exception applies, as Plaintiff argues.

### 1. *Law-Enforcement Purposes*

To begin, it is undisputed that the records in question were created for law-enforcement purposes.  "Plaintiff's investigative main file was compiled by the FBI during its criminal investigation of plaintiff and others for the crimes of conspiracy to commit mail fraud, the sale of unregistered securities and money laundering, and engaging in unlawful monetary transactions . . . ."  Def. MSJ at 21.  This threshold question is easily answered.

### 2. *Balance of Interests*

Next, this Court "must balance the public interest in disclosure against the interest Congress intended the Exemption to protect."  Reporters Comm., 489 U.S. at 776.  Plaintiff emphasizes that the FBI must "demonstrate that privacy interests related to the withheld records outweigh the public interest in accessing the records," Pl. MSJ at 14 (citing Nat'l Archives & Records Admin. v. Favish, 514 U.S. 157, 171 (2004)), a requirement Bartko asserts the FBI has not met.

The privacy interests claimed by the FBI relating to various records partially or fully withheld include the names and/or identifying information of: (1) FBI special agents and support employees; (2) third parties of investigative interest; (3) non-FBI federal-government personnel; (4) third parties merely mentioned; (5) recipients of federal grand-jury subpoenas, trial subpoenas, administrative subpoenas, and individuals supplying responses; (6) third-party victims; (7) third parties who provided information to the FBI; and (8) state law-enforcement employees.  See Def. MSJ at 9-10; see also Second Hardy Decl., ¶¶ 65-77.  As discussed further below, Plaintiff argues that he has "demonstrated that there is a sufficient public interest in access to . . . in particular those records claimed to be exempt from release in [aforementioned] categories 2, 3, 4, 6 and 7 . . . ."  Pl. MSJ at 2, ¶ 2 (emphasis added).  Although the Court is

uncertain whether this means that Bartko does not contest any records withheld under categories 1 and 5, it will nonetheless address those exemption rationales as well in order to resolve fully this branch of Plaintiff's many-tentacled FOIA inquisition.

       a.   Privacy Interest

The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought.  See ACLU, 655 F.3d at 6.  In this context, the Supreme Court has rejected a "cramped notion of personal privacy" and emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." Reporters Comm., 489 U.S. at 763.  To constitute a privacy interest under FOIA, the claimed interest must be "substantial." Multi Ag Media LLC v. U.S. Dept. of Ag., 515 F.3d 1224, 1229-30 (D.C. Cir. 2008); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1174 (D.C. Cir. 2011).  "[S]ubstantial," however, "means less than it might seem.  A substantial privacy interest is anything greater than a *de minimis* privacy interest." Multi Ag Media, 515 F.3d at 1229-30.

The Court finds substantial each of the privacy interests the FBI has asserted, a decision consistent with D.C. Circuit law.  As to private citizens, "third parties who may be mentioned in investigatory files, as well as . . . witnesses and informants who provided information during the course of an investigation," have a privacy interest in the contents of law-enforcement records. Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995); see also Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) ("It goes almost without saying . . . that individuals . . . whose names appear in the file retain a strong privacy interest in not being associated with an investigation involving professional misconduct . . . .").  Indeed, this interest is so strong that our Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless

disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" Schrecker v. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting SafeCard, 926 F.2d at 1206). This includes "witnesses, informants, and the investigating agents," all of whom "'have a substantial interest in seeing that their participation remains secret.'" Id. at 666 (quoting Senate of the Com. of Puerto Rico, 823 F.2d at 588).

Bartko insists that "the FBI has failed to meet this burden" in showing that the "privacy interests related to the withheld records outweigh the public interest," given the "diminished privacy interests held by AUSA Wheeler and third parties that have had their identity previously disclosed into the public domain along with their statements given to law enforcement interviewers." Pl. MSJ at 14. This assertion is more properly understood as an invocation of the public-domain exception, which the Court discusses below in Section III.C.

As to the privacy interests in the specific records at issue, the FBI avers that it "examined each item of information to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue." Def. MSJ at 23 (quoting Second Hardy Decl., ¶ 64) (internal quotation marks omitted). "In each instance where information was withheld," moreover, "it was determined that individual privacy rights outweighed the public interest." Id. On the basis of the FBI's descriptions of the kinds of privacy interests implicated by its claimed exemptions, this Circuit's "categorical rule" permitting withholding of records concerning private citizens would seem to cover names and/or identifying information excluded under Exemption 7(C) in all of the sub-categories specified. See Second Hardy Decl., ¶¶ 65-77.

It is true that "an agency [may not] . . . exempt from disclosure all of the material in an investigatory record solely on the grounds that the record includes some information which

identifies a private citizen or provides that person's name and address . . . [b]ecause such a blanket exemption would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files . . . ." Nation Magazine, 71 F.3d at 896.  Instead, this Circuit's rule "directs an agency to redact the names, addresses, or other identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons," but not necessarily entire files.  See id.  The FBI has done just that here, identifying eight different categories of individuals with privacy interests and partially redacting many of the records so as to leave a meaningful portion of the document to be released.

> b.   Public Interest

Having established the substantial privacy interest in the records withheld, the Court next considers the public interest in their release.  See id. at 893.  "[W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny, rather than on the particular purpose for which the document is being requested."  Reporters Comm., 489 U.S. at 772 (citation and internal quotation marks omitted).  While information that "sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose," that purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  Id. at 773.

That description aptly applies to this case.  Bartko's alleged public interest is in "shed[ding] light on what the Department of Justice is up to; how it conducts criminal investigations and prosecutions; how in some unfortunate instances Department of Justice assistant prosecutors engage in misconduct," Pl. MSJ at 16, and in revealing potential

misconduct that has resulted in unfair trials.  See id. at 19.  However noble these public interests theoretically may be, the records sought simply do not fulfill those aims.  Having conducted its *in camera* review, the Court is satisfied that, with a few exceptions stated below, the documents were properly withheld or redacted on the basis that their release would reveal names and/or other identifying information about private citizens, and that these records do not "shed light" on the agency's conduct as Plaintiff believes.  See Pl. MSJ at 24-25.  Furthermore, "[w]hen the subject of such [investigatory documents] is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir."  Reporters Comm., 489 U.S. at 780.  "Whatever the incremental value of disclosure . . . , it does not outweigh the relevant individuals' clear and significant privacy interest in nondisclosure of their personal information."  Schrecker, 349 F.3d at 666.  And although Bartko does allege prosecutorial misconduct as the basis for both his own interest in accessing these FBI records, and also as the public interest in their release, he has not identified how the records sought will provide "compelling evidence that the agency is engaged in illegal activity," see id. at 661 (emphasis added), nor does the Court find such evidence based on its review.

With one exception discussed below, therefore, the Court finds that the privacy interests indisputably outweigh any potential public interest there may be in the records.  The following records, accordingly, were properly withheld in full by the FBI under Exemption 7(C) categories 2, 3, 4, 6, and 7: pages numbered Bartko 93-94, 274-75, 312-13, 314-21, 364, 633, 678-80, 682-83, 685-86, 778-79, 830, 832-34, 910-16, 918, 923, 929, and 1090-91.  In addition, the following records have also been properly redacted in part under the same exemption categories: pages

numbered Bartko 49, 64, 65, 92, 129-37, 280, 310-11, 478-79, 909, 917, 919-22, 924-26, and 1232-33.

While it is unclear whether Plaintiff even contests records withheld under Exemption 7(C) category 5, the Court finds pages numbered Bartko 280, 751-60, and 1015 to have been properly redacted or withheld.  In similar fashion, the Court is satisfied that records numbered Bartko pages 66, 115-17, 247-48, and 1071-76 were properly redacted or withheld under category 1.

In the case of one record, however, the Court does not see how it is covered by the exemptions claimed.  The Court has reviewed the record numbered Bartko page 244 ("U.S. District Court for Eastern District of North Carolina sentencing schedule") and does not understand either why this seemingly public information should be withheld for privacy reasons or how Exemption 7(C) relates to it.  See Vaughn Index at 5.  The Court will thus order that this document be released.

The Court also notes that even if Exemption 3 did not protect the thumb drive, the documents located there would be covered under Exemption 7(C).  For the reasons discussed above, see Section III.A, *supra*, the FBI acted appropriately in refusing to describe the contents so as to preserve the privacy of the individual(s) whose name(s) and other identifying information is contained in those records.  The Court is satisfied that the FBI appropriately declined to specify which of the 7(C) exemption categories applied to the thumb drive in order to preserve the privacy of the individual(s) whose records were contained therein.

Finally, "Bartko makes no further challenge with respect to the FBI's withholding of Bartko 703-718 [under categories 1 and 3,] which the FBI describes as tactical information concerning the plan for Bartko's arrest on November 18, 2009."  Pl. MSJ at 29.

### 3. *Public-Domain Doctrine*

Plucking another arrow from his quiver, Bartko, in the alternative, invokes the public-domain doctrine, under which "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999). After all, "if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes." Niagara Mohawk Power Corp. v. Dep't of Energy, 169 F.3d 16, 19 (D.C. Cir. 1999). However, "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 500 (1994). Under the public-domain doctrine, "the party advocating disclosure bears the initial burden of production; for were it otherwise, the government would face the daunting task of proving a negative: that requested information had not been previously disclosed." Cottone, 193 F.3d at 554.

In order words, for Bartko to satisfy his burden, he must show that the information requested is as specific as the information previously released, that it matches that information, and that it has already been made public through an official and documented disclosure. See Neary v. Fed. Deposit Ins. Corp., No. 14-1167, 2015 WL 2375395, at *5 (D.D.C. May 19, 2015) (citing Cottone, 193 F.3d at 553-54). In particular, Plaintiff must "'point[ ] to specific information in the public domain that appears to duplicate that being withheld.'" Cottone, 193 F.3d at 554 (quoting Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983)) (emphasis added). "The test is exacting because 'the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a

FOIA exemption.'"  Neary, 2015 WL 2375395, at *5 (quoting Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007)).

Here, Plaintiff alleges that because USPIS released third-party information to Bartko gathered from "well over 30 third party witnesses interviewed during the course of the government's criminal investigation of Bartko," the government has "no further reasonable expectation that the identities of any of the grand jury witnesses and the substance" of their testimony can remain private.  See Pl. MSJ at 13.  Yet while Bartko alleges that "USPIS . . . previously disseminated a significant amount of third party records and information in the non-exempt records released to Bartko by the USPIS," Pl. MSJ at 12-13, he never identifies which of the documents released by USPIS are substantially identical to those withheld by the FBI. Plaintiff has simply recited that "information was disclosed by the government during the presentation of his co-conspirators' trial testimony during Bartko's trial," Reply at 8, and that records released in his related FOIA requests of the USPIS include "publicly disclosed information" about witness interviews.  See id. at 7.  Elsewhere, he cites to his Motion for Summary Judgment in his related FOIA litigation with USPIS, see id. at 8, but it is not the Court's job to cross-reference his half-dozen FOIA actions to determine precisely what was released, by whom, and when.  That burden falls on Plaintiff, see Cottone, 193 F.3d at 554, and nowhere in his Cross-Motion for Summary Judgment or in his Reply does he identify the precise records released by USPIS or another agency that have been withheld by the FBI.  (Perhaps this is not surprising, for if such records had already been released, his pursuit of the same materials held by the FBI would be of questionable value.)

Bartko, furthermore, provides less specific links between the information already released and the information sought than in other cases in which courts in this district have also rejected

public-domain-exception claims.  For example, in <u>Holt v. Dep't of Justice</u>, 734 F. Supp. 2d 28

(D.D.C. 2010), the plaintiff provided an affidavit in which he asserted that government witnesses

testified in open court to <u>all</u> facts and circumstances related to the criminal case, and that the

local newspapers published several articles related to his trial.  <u>See id.</u> at 42.  That court

nonetheless found that his affidavit did "not suffice," and he provided "no other document or

other evidence to meet his 'initial burden of pointing to specific information in the public domain

that appears to duplicate that being withheld.'"  <u>Id.</u> (quoting Afshar, 702 F.2d at 1130).  Other

cases in this district have held similarly.  <u>See, e.g.</u>, <u>Neary</u>, 2015 WL 2376495, at *5 (holding that

identification of only some names on publicly available lists was insufficient to satisfy public-

domain exception to obtain all such names); <u>Lieff, Cabraser, Heimann & Bernstein, LLP v.

Dep't of Justice</u>, 697 F. Supp. 2d 79, 85-86 (D.D.C. 2010) (finding that "news reports, corporate

statements, and a court filing . . . [were] essentially devoid of any specific explanation of the

overlap between the information in these exhibits and" the information plaintiff sought).

       All that Bartko claims is that prior USPIS releases "[m]aterially [d]iminish[]" the privacy

interests that motivate the FBI's claim of Exemption 7(C).  <u>See</u> Pl. MSJ at 12.  He provides no

specific details in his Motion or affidavit of the precise information released by USPIS that

"appears to duplicate that being withheld."  <u>Afshar</u>, 702 F.2d at 1130.  The Bureau, accordingly,

is right to argue that Bartko has fallen short of the burden under the public-domain doctrine, for

the "records processed by the USPIS were USPIS records, not FBI records."  Def. Opp. at 6.

Absent specific identification of substantially identical records already released, the Court finds

Plaintiff's public-domain argument does not alter the calculus that permits the FBI to withhold

relevant records.

C.  Other FOIA Exemptions

The only pages the FBI did not withhold under Exemptions 3, 6, and/or 7(C) are records numbered Bartko pages 950-53.  As to these, Defendant asserted Exemption 7(E).  This exemption permits the withholding of records "compiled for law enforcement purposes" if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  To properly invoke 7(E), the FBI must satisfy three requirements.  See Acosta v. F.B.I., 946 F. Supp. 2d 53, 66 (D.D.C. 2013).  First, the record must be "compiled for law-enforcement purposes."  Id. at 64.  Second, the agency must show that production would disclose either techniques and procedures for law-enforcement investigations or guidelines for law-enforcement investigations that are "generally unknown to the public."  Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012) (citation and internal quotation marks omitted).  Finally, it must show that disclosure "could reasonably be expected to risk circumvention of the law."  Id.

Here, the FBI has withheld pages 950-53 under the description of "Statistical Information Contained in Effectiveness Rating – FD 515."  Second Hardy Decl., ¶ 90; Vaughn Index at 6-7. The Court is uncertain whether this rationale was specified in error, as the exempted records do not appear to fit such description.  Nor are these documents on their face in any other way appropriately withheld under Exemption 7(E).  Since "FOIA expressly places the burden 'on the agency to sustain its action,'" Reporters Committee, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)), the FBI has failed to meet its burden, and the Court sees no reason to withhold these pages from Plaintiff.

**IV.      Conclusion**

Having hacked through the thicket of Bartko's challenges to the FBI's asserted FOIA exemptions, the Court concludes that the FBI properly withheld nearly all of the records in question.  It will thus issue a contemporaneous Order granting the Bureau's Motion in large part, but requiring release of records numbered Bartko pages 80, 244, and 950-53.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  December 18, 2015