`UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY BARTKO,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, *et al.*,<br><br>    Defendants. | Civil Action No.  13-1135 (JEB) |

## MEMORANDUM OPINION

This Opinion is the latest installment in the quest of *pro se* Plaintiff Gregory Bartko to

recover documents from federal agencies that he believes may help him overturn his conviction

for conspiracy, mail fraud, and selling unregistered securities.  Presently serving a 23-year

sentence for these charges, Bartko has spent the last three years filing Freedom of Information

Act requests with, *inter alia*, the Department of Justice, the Federal Bureau of Investigation, and

the United States Postal Inspection Service, and litigating the same – with varying degrees of

success.

This Opinion concerns only the FOIA request Bartko filed with USPIS.  The Court

previously found that agency's search for responsive documents inadequate and its explanation

for withholding some materials wanting.  USPIS now returns with a more robust justification for

its treatment of Bartko's request and its withholding of certain responsive materials.  Although

Bartko remains displeased with his yield, the Court is satisfied that the agency has now fulfilled

its obligations under the statute.

## I.     Background

The Court has issued numerous Opinions relating to Bartko's FOIA requests.  See, e.g., Bartko v. Dep't of Justice, 2015 WL 9272833 (D.D.C. Dec. 18, 2015).  It will not, therefore, recount the many twists and turns this matter has taken over the years or the details of its prior holdings.  The Court here instead provides only the CliffsNotes version of events: Bartko, a securities attorney, investment banker, and broker, was convicted after trial of various mail-fraud and securities-related charges.  See United States v. Bartko, 728 F.3d 327, 334 (4th Cir. 2013) (affirming conviction and denying motions for new trial).  In 2010, he was sentenced to 272 months' imprisonment.  Id.  While in jail, he embarked on a journey to uncover evidence that could prove his innocence or, alternatively, demonstrate prosecutorial misconduct.  He submitted similar FOIA requests to seven federal agencies, seeking records of their investigation and prosecution of him.  See Bartko v. Dep't of Justice, 62 F. Supp. 3d 134, 139 (D.D.C. 2014).  The Court will focus only on the request Bartko filed with USPIS on January 7, 2013, which sought "all records and/or data contained in the files of [the] agency and specifically under [Bartko's] name and/or identifier assigned to [his] name," including but not limited to

> (1) arrest records; (2) investigation and/or investigatory reports; (3) reports or evidentiary and/or scientific information and findings; (4) wants, warrants, and/or detainers; (5) final and closing investigation reports; (6) reports and information from all other federal or state governmental agencies which were acquired by [USPIS] during any investigation; and (7) any and/or all information, data, or reports not otherwise exempt by statute or regulations adopted by [USPIS].

Prior MSJ (ECF No. 145), Attach. 1 (Declaration of Kimberly Williams), Exh. A (FOIA Request).

On March 14, 2013, the agency responded by releasing in part 36 pages of responsive materials, withholding 692 pages as exempt from disclosure, and informing Bartko that 281

additional pages of responsive materials would be forwarded to the originating agencies.  See id.,

Williams Decl., Exh. D (March 14, 2013, Letter from USPIS to Bartko) at 1.  The agency

invoked FOIA Exemptions 6, 7(C), and 7(D) as the bases for its withholdings and redactions.

See id.  After exhausting his administrative remedies, Bartko filed suit in this Court, seeking to

compel disclosure of the withheld materials and challenging the adequacy of the agency's search.

See ECF No. 1 (Complaint).

 In mid-2014, USPIS and Bartko cross-moved for partial summary judgment, but the

agency withdrew its motion after the Court denied summary judgment to the FBI in parallel

litigation around another one of Bartko's requests.  See ECF Nos. 58, 65, 116.  In early 2015,

USPIS filed a renewed motion for summary judgment, and Plaintiff also renewed his cross-

motion.  See ECF Nos. 145, 152.  In a Memorandum Opinion and separate Order on June 2,

2015, the Court granted in part and denied in part Bartko's summary-judgment motion and

denied USPIS's motion.  See ECF Nos. 184 (USPIS Order), 185 (USPIS Opinion).

 The Court found that USPIS had not established that its search was reasonably calculated

to uncover all responsive materials and advised it "to submit new documentation that

demonstrates the adequacy of its search."  USPIS Opinion at 15.  The Court also deemed

insufficient the agency's justifications for its withholdings, labeling the invocations of

Exemptions 6, 7(C), and 7(D) imprecise and conclusory.  See id. at 10-15.  It counseled the

agency to "furnish the Court with full explanations of its withholdings under all relevant FOIA

exemptions for any records and redacted portions not made available to Plaintiff" so that the

Court would be equipped to "determine the propriety of such exemptions and resolve the parties'

competing Motions on those issues."  Id. at 15.

Two months later, Bartko filed a Motion for Leave to Conduct Limited Discovery with USPIS. See ECF No. 195 (Disc. Mot.). Shortly thereafter, USPIS filed yet another Motion for Summary Judgment, see ECF No. 204 (Mot.), and Bartko did the same. See ECF No. 211 (Cross-Mot.). These three Motions are presently before the Court. To aid in its determination, the Court ordered the government to provide the disputed pages for *in camera* review, see Minute Order of Feb. 8, 2016, which review is now complete.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's

affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.    Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order

the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(4)(B);

Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial

evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to

sustain its action' and directs the district courts to 'determine the matter de novo.'"  Reporters

Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).  "At all times courts must bear in

mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ."  Nat'l Ass'n of

Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502

U.S. 164, 173 (1991)).

With these standards in mind, the Court turns to the Cross-Motions at hand.  In those

filings, the parties rehash many of the issues they raised in earlier motions:  They disagree about

the adequacy of the search, the applicability of the asserted exemptions, and the segregability of

partially exempt documents.  In their latest submissions, the parties also clash over the need for

discovery.  The Court addresses each issue separately and in that order.

A.  Adequacy of the Search

Chief among Bartko's contentions is that USPIS still has not established that its search

for materials responsive to his request was adequate.  "An agency fulfills its obligations under

FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to

uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C.

Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also

Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is

not whether there might exist any other documents possibly responsive to the request, but rather

whether the search for those documents was adequate."  Weisberg v. Dep't of Justice, 745 F.2d

1476, 1485 (D.C. Cir. 1984).  The adequacy of an agency's search for documents requested

under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the

facts of each case."  Id.  To meet its burden, the agency may submit affidavits or declarations

that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d

121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are

sufficient to show that an agency complied with FOIA.  See id.  On the other hand, if the record

"leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is

not proper."  Truitt, 897 F.2d at 542.

By way of reminder, the Court previously found USPIS's search inadequate because

none of its declarations stated that the agency had searched the full universe of potentially

responsive materials.  The Court explained that "[t]o satisfy the dictates of FOIA, USPIS must, at

a minimum, 'aver that it has searched all files likely to contain relevant documents.'"  UPSIS

Opinion at 7 (quoting Am. Immigration Council v. Dep't of Homeland Sec., 21 F. Supp. 2d 60,

71 (D.D.C. 2014)).  Of course, "[t]here is no requirement that an agency search every record

system," but "[a]t the very least, [the agency is] required to explain in its affidavit[s or

declaration] that no other record system was likely to produce responsive documents."  Oglesby

v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also id. ("A reasonably detailed affidavit

. . . averring that all files likely to contain responsive materials (if such records exist) were

searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the

search and to allow the district court to determine if the search was adequate in order to grant

summary judgment.").  Because USPIS had not included such an attestation, the Court found that

an issue of material fact existed as to the adequacy of the search, preventing it from granting

summary judgment.  See USPIS Opinion at 7-8.

In Bartko's present Motions, he resurrects many of the same arguments he first advanced in his prior filings on this issue.  <u>See</u> Cross-Mot. at 13; ECF No. 152 (Plaintiff's Prior Motion for Partial Summary Judgment) at 6-11; ECF No. 170 (Plaintiff's Prior Reply) at 3-8.  Put simply, Bartko believes that the latest declarations submitted on behalf of USPIS "confirm that the Defendant has in no way altered its search methodology."  Cross-Mot. at 14.  USPIS does not dispute that statement directly but instead argues that its recent declarations demonstrate that the agency's methodology was reasonable.  <u>See</u> Mot. at 12.

The Court believes USPIS is correct.  The agency has submitted two declarations – from Kimberly Williams and Tammy Warner – that aver that "[t]here are no other systems of records in the USPIS that would contain the records that were requested" beyond the systems that were searched.  <u>See</u> Mot. at 13; <u>see also</u> Mot., Attach. 2 (Williams Decl.), ¶ 4 ("I searched those databases because they are the only databases likely to contain all responsive documents."); Mot., Attach. 3 (Declaration of Tammy Warner), ¶ 8 ("[A]ll locations and systems of records likely to have responsive records were searched.").

Specifically, Williams, the Information Disclosure Technician for the Office of Counsel at USPIS, states that she "searched the Financial Crimes Database ('FCD'), which cross references all of the Inspection Service databases," as well as the "Inspection Service Integrated Information System ('ISIIS') – the National, integrated database containing investigatory information from [USPIS] investigations for cases that involved and/or included plaintiff."  Williams Decl., ¶¶ 1, 4.  She explains that she searched for his name as well as his social security number in her latest search and her previous searches.  <u>See</u> <u>id.</u>, ¶ 4.  Although she conducted an additional search in response to the Court's June 2015 Order, Williams explains that "[t]he steps

taken in these later searches are the same steps as were taken . . . in response to plaintiff's initial request." Id.

In one sense, then, Bartko is correct; the agency has not altered its search methodology. It has, however, fully described that methodology in two affidavits and, most importantly, has incanted the "magic words" concerning the adequacy of the search – namely, the assertion that USPIS searched all locations likely to contain responsive documents.  Whereas the agency had previously only claimed that it had searched "the most likely places to uncover responsive documents," ECF No. 145, Attach. 1 (Prior Declaration of Kimberly Williams), ¶ 8, it now swears that it has searched every database where such documents might be stored.  This satisfies the agency's obligation to demonstrate the adequacy of its search.  See Oglesby, 920 F.2d at 68; see also, e.g., Toolasprashad v. Bureau of Prisons, 474 F. Supp. 2d 14, 15 (D.D.C. 2007) (FOIA search was adequate where agency representatives "have adequately described the searches and have averred that all files likely to contain responsive records have now been searched"); Hart v. Dep't of Justice, 648 F. Supp. 2d 113, 117 (D.D.C. 2009) (granting summary judgment to agency based on declaration averring that "the most likely, and only, place where [responsive] records" could be located was searched).  It is therefore of no moment that the agency's initial search and the search it conducted after the Court's June 2015 Order yielded the same number of responsive documents – if anything, this simply confirms the adequacy of the first search.

To be sure, "[i]f the requester produces countervailing evidence placing the sufficiency of the identification or retrieval procedures genuinely in issue, summary judgment is inappropriate."  Penny v. Dep't of Justice, 712 F. Supp. 2d 18, 20–21 (D.D.C. 2010) (citing Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)).  Bartko believes he has supplied such evidence, in the form of emails sent

from a member of his prosecution team to USPIS Inspector Michael Carroll, which were not released by the agency but which Bartko managed to obtain through other means. See Cross-Mot. at 19. He also asserts that Carroll took handwritten notes during a particular interview he conducted as part of his investigation, and that USPIS should have disclosed those notes. Id.

By now, however, Bartko is well aware that identifying a handful of documents that an agency failed to uncover does not, in itself, demonstrate that a search was inadequate. See Boyd v. Criminal Div. of Dep't of Justice, 475 F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search."); Espino v. Dep't of Justice, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) ("[A] search is not inadequate simply because it failed to turn up a document that [plaintiff] believes must exist, or even a document he knows to exist.") (citation omitted). Bartko does not identify a particular database or set of records that he believes the agency has not, but should have, searched, so even if the emails and notes he points to were inadvertently overlooked, they do not evince an insufficient search.

According to the agency, moreover, simple explanations account for these "missing" documents. The emails, for example, were generated by the Department of Justice and are therefore not USPIS records. One of the agency's attorneys, Steven Sultan, explains that there was likely "no reason to save or place the email in the case file" USPIS gathered on Bartko. See Opp. to Cross-Mot., Attach. 1 (Declaration of Steven Sultan), ¶ 8. As for the handwritten notes, Sultan avers that Carroll likely did not take any in that interview. Id., ¶ 7. Although Bartko takes Sultan's declaration to be further evidence of USPIS's shady practices, see Cross-Mot. Reply at 5, the Court does not. A search is not inadequate where it fails to uncover documents that likely do not exist.

Bartko also finds nefarious the agency's decision to release 150 additional pages of responsive materials to him after the Court's June 2015 Order.  See Cross-Mot. at 22, 27-28.  As USPIS's declarants explain, the agency exhibited greater care in compiling its latest Vaughn Index following the Court's admonishment that it provide more detailed explanations of its asserted exemptions and withholdings.  See Warner Decl., ¶ 9.  The subsequent disclosures therefore do not, contra Bartko, embody improper behavior, but rather demonstrate an agency doing precisely what the Court required.

In addition to his suspicion of bad faith, Bartko insists that the search was inadequate because USPIS ought to have searched for records relating to his alleged co-conspirators.  See Cross-Mot. at 14.  The agency does not deny that it did not perform such a search.  But USPIS correctly notes that Bartko's request asked only for files "under [his] name and/or identifier assigned to [his] name."  FOIA Request at 1.  While there is no doubt, UPSIS admits, that agencies have a duty to construe FOIA requests liberally, see Truitt, 897 F.2d at 544-45, a requester must also "reasonably describe[]" the records sought.  See 5 U.S.C. § 552(a)(3).  In this instance, although the request paints with a broad brush in enumerating the many types of information it might encompass – e.g., "reports and information from all other federal or state governmental agencies which were acquired by your agency during any investigation," FOIA Request at 1 – it expressly states that records must be related to Bartko's name or other identifier assigned to him.  It does not mention anyone else.  The plain language of the request – no matter how liberally construed – simply does not support Bartko's current position that the agency was required to search for files related to "three alleged co-conspirators and AUSA Wheeler."  Cross-Mot. at 14.  The request is not "reasonably susceptible to the broader reading" Bartko now seeks to impose on it.  See LaCedra v. Exec. Office for the U.S. Attorneys, 317 F.3d 345, 348 (D.C.

Cir. 2003).  Indeed, Plaintiff himself has acknowledged as much.  <u>See</u> ECF No. 152 (Prior MSJ),

at 10-11 ("A new search should include the names of Bartko's three co-conspirators, not because

these individuals were specifically named in Bartko's FOIA request directly, but because they

are inextricably a part of Bartko's criminal investigation.").

Seemingly aware of the weakness of his argument, Bartko suggests, Hail-Mary fashion,

that the Court intended to order the agency to search for materials related to his co-conspirators,

as it did in an Order to the FBI.  But the Court's June 2015 Order did no such thing.  And

Bartko's request to the FBI, unlike his request to USPIS, did identify co-conspirators by name.

<u>See</u> Opp. to Cross-Mot., Attach. 3 (FBI FOIA Request).  Should Bartko remain convinced that

USPIS possesses records of his co-conspirators or AUSA Wheeler, he is free to file a new

request.  As to this request, however, the Court finds that the agency's search was reasonably

calculated to uncover all responsive documents.

B.  <u>Exemptions</u>

USPIS invoked three exemptions in its prior summary-judgment motion: 6, 7(C), and

7(D).  In its renewed Motion, however, it no longer relies on Exemption 7(D), instead asserting

that its withholdings are justified under Exemptions 3, 6, and 7(C).  The Court proceeds to an

analysis of these latest three.

1.  <i>Exemption 3</i>

Defendant cites Exemption 3 in withholding bank checks subpoenaed for the grand-jury

investigation in Bartko's case.  <u>See</u> Mot. at 9.  "Exemption 3 covers matters 'specifically

exempted from disclosure by statute," provided that such statute leaves no discretion on

disclosure or 'establishes particular criteria for withholding or refers to particular types of

matters to be withheld.'"  <u>Larson</u>, 565 F.3d at 861 (quoting 5 U.S.C. § 552(b)(3)).  Federal Rule

of Criminal Procedure 6(e) bars the disclosure of matters occurring before a grand jury.  Because

it was affirmatively enacted by Congress, Rule 6(e) is recognized as a "statute" for Exemption 3

purposes.  See Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv., 656 F.2d 856,

867 (D.C. Cir. 1981).  The Rule's grand-jury-secrecy requirement is applied broadly and

embraces any information that "tend[s] to reveal some secret aspect of the grand jury's

investigation, . . . [including] the identities of witnesses or jurors, the substance of testimony, the

strategy or direction of the investigation, the deliberations or questions of jurors, and the like."

Lopez v. Dep't. of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (internal quotation marks

omitted).  In the absence of a statutory exception to the general presumption of grand-jury

secrecy, Rule 6 is "quite clear that disclosure of matters occurring before the grand jury is the

exception and not the rule," and "the rule's ban on disclosure is for FOIA purposes absolute and

falls within . . . Exemption 3."  Fund for Constitutional Gov't., 656 F.2d at 868.

Although USPIS had not initially claimed this exemption in its prior summary-judgment

motions – instead invoking Exemption 7(D) – it now states that disclosing the checks would

violate the secrecy of the grand-jury proceedings.  See Warner Decl., ¶ 15.  This issue need not

detain the Court because Bartko expressly concedes that the bank checks are covered by

Exemption 3.  See Cross-Mot. at 5 ("Of the withheld pages, 23 pages are copies of bank checks

withheld under FOIA Exemption 3 and Fed. R. Crim. P. 6(e), which Bartko no longer

contests.").  The Court, consequently, concludes that these bank checks are properly withheld.

### 2.  Exemptions 6 and 7(C)

Next up are Exemptions 6 and 7(C).  The former protects "personnel and medical files

and similar files the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy."  5 U.S.C. § 552(b)(6).  The latter sanctions withholding of "records of

information compiled for law enforcement purposes, but only to the extent that the production of

such law enforcement records or information . . . could reasonably be expected to constitute an

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Both provisions require

agencies and reviewing courts to "balance the privacy interests that would be compromised by

disclosure against the public interest in release of the requested information."  Beck v. Dep't of

Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. Dep't of Justice, 968 F.2d 1276,

1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same

weighing of interests, the balance tilts more strongly toward nondisclosure in the context of

Exemption 7(C) because its "privacy language is broader than the comparable language in

Exemption 6 in two respects."  Reporters Comm., 489 U.S. at 756.  First, Exemption 6

encompasses only "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the

adverb "clearly."  See id.  Second, Exemption 6 prevents disclosures that "would constitute" an

invasion of privacy, while Exemption 7(C) targets any disclosures that "could reasonably be

expected to constitute" such an invasion.  Id.  Both differences are the result of specific

amendments, reflecting Congress's conscious choice to provide greater protection to law-

enforcement materials than to personnel, medical, and other similar files.  See id.  This Circuit

has accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than

Exemption 6.  See ACLU v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997

F.2d at 1491.

If the records at issue were "compiled for law enforcement purposes," the Court need

only address whether the agency has properly withheld them under Exemption 7(C), and there is

no requirement to consider the higher bar of Exemption 6.  In considering this question, "the

focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Jefferson v. Dep't of Justice, Office of Prof'l Responsibility, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (internal quotation marks and citations omitted).

In this case, Bartko concedes that the records he wants were compiled for law-enforcement purposes – after all, that is his reason for seeking them. See Cross-Mot. at 30 ("Bartko is interested primarily in the substance of statements made by individuals interviewed by law enforcement . . . ."); see also Mot. at 19 ("There is no doubt that the individuals appearing in the investigative file were private individuals or law enforcement personnel for the purposes of FOIA Exemption 7(C)."). The "threshold" showing required for 7(C) is thus satisfied, and the Court need only determine whether the privacy interests asserted outweigh the public's interest in disclosure.

This Circuit has acknowledged that a significant privacy interest is at stake when an individual is mentioned in a law-enforcement investigation, and court "decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." Schrecker v. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003). This privacy interest "extends to persons who are not the subjects of the investigation [but who] may nonetheless have their privacy invaded by having their identities and information about them revealed in connection with the investigation." Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996).

Plaintiff contends that the privacy interests at issue here fall into three categories: First, Bartko's alleged co-conspirators and trial witnesses already "had the substance of their

respective witness statements and documentary evidence . . . revealed in open court," and

Plaintiff thus believes they have no remaining privacy interests.  See Cross-Mot. at 32.  Second,

because USPIS released 37 names of third parties in its earlier response to his FOIA request,

Bartko posits that the agency has waived any privacy interests of those individuals.  See id. at

32-34.  Third, Bartko concedes that any remaining individuals who do not fall into these first two

categories must have "a substantial privacy interest."  Id. at 34.

    As to the first group, because Bartko's request is not limited to the precise content of

these witnesses' testimony at his trial, his claim seems to be that such testimony forfeits any

privacy interest in information about the witnesses compiled for law-enforcement purposes.  But

he fails to identify any authority suggesting that this is so.  In fact, the contrary is true.  See, e.g.,

Fischer v. Dep't of Justice, 596 F. Supp. 2d 34, 48 (D.D.C. 2009) ("the fact" that witnesses' or

agents' "identities have previously been disclosed does not diminish their privacy interests").

    With regard to the second group, USPIS admits that the names of those 37 third parties

and related information "were released to Plaintiff in error," but asserts that further disclosure of

materials containing their names and identities would only compound that error.  See Opp. to

Cross-Mot. at 18-19.  Of course, disclosure of some information about an individual – whether

erroneous or intentional – does not vitiate the privacy interests of that individual in other

information about herself that might be contained in a law-enforcement file.  The agency's

inadvertent disclosure of those names, moreover, hardly constitutes a waiver of privacy interests.

As another court in this district recently explained, the "privacy interest at stake belongs to the

individual, not the government agency . . . . [And t]hat interest can be waived, but only by the

individual whose interest is affected."  Petrucelli v. Dep't of Justice, No. 11-1780, 2016 WL

354872, at *3, *5 (D.D.C. Jan. 28, 2016) (citations omitted).  Bartko presents no evidence

indicating that the 37 individuals whose names were accidentally released have <u>themselves</u>

waived their privacy interests in any USPIS records.  The Court, therefore, concludes that all

three of the categories of individuals whose identification or other information may be contained

in the records USPIS compiled for law-enforcement purposes enjoy a substantial privacy interest

in those materials.

The Court next addresses the countervailing public interests at issue.  As the Supreme

Court has explained,

> Where the privacy concerns addressed by Exemption 7(C) are
> present, . . . the citizen must [first] show that the public interest
> sought to be advanced is a significant one, an interest more specific
> than having the information for its own sake. Second, the citizen
> must show the information is likely to advance that interest.
> Otherwise, the invasion of privacy is unwarranted.

<u>Nat'l Archives & Records Admin. v. Favish</u>, 541 U.S. 157, 172 (2004).  The Court is mindful

that "[t]he public interest in disclosure must be evaluated in light of FOIA's central purpose[] 'to

open agency action to the light of public scrutiny' . . . .  [The Court] should focus not on the

general public interest in the subject matter of the FOIA request, but rather on the incremental

value of the specific information being withheld."  <u>Schrecker</u>, 349 F.3d at 661 (quoting

<u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 772).  As relevant here, "when

governmental misconduct is alleged as the justification for disclosure, the public interest is

insubstantial unless the requester puts forward compelling evidence that the agency . . . is

engaged in illegal activity and shows that the information sought is necessary in order to confirm

or refute that evidence."  <u>Computer Professionals for Social Responsibility</u>, 72 F.3d at 905.  "A

mere desire to review how an agency is doing its job, coupled with allegations that it is not

[doing its job], does not create a public interest sufficient to override the privacy interests

protected by Exemption 7(C)."  McCutchen v. Department of Health & Human Servs., 30 F.3d

183, 188 (D.C. Cir. 1994).

Here, Bartko contends that the information withheld by USPIS will likely reveal

"whether the USPIS withheld evidence from Bartko's defense that was favorable or exculpatory;

whether the USPIS contributed to or was complicit in the government's knowing presentation of

. . . false and misleading evidence implicating Bartko . . . ; and the extent to which the USPIS

continues to withhold Brady material from Bartko even five years after his conviction."  Cross-

Mot. at 36-37.  The agency rejoins that this "interest" in determining whether USPIS possesses

information that corroborates Bartko's claims of innocence or prosecutorial misconduct is

essentially a personal interest in discovering exculpatory materials and is not public in nature.

See Opp. to Cross-Mot at 22-23.  Bartko, however, observes that such a stance would doom any

FOIA request seeking materials that might reveal a Brady violation or similar government

misconduct, if such request were filed by a convicted criminal offender.

The Court agrees that the mere fact that Bartko may also have a personal interest in the

misconduct he believes plagued his criminal prosecution does not, standing alone, eliminate the

public's general interest in uncovering patterns of prosecutorial misconduct.  But "[w]hen the

subject of such [investigatory documents] is a private citizen and when the information is in the

Government's control as a compilation, rather than as a record of 'what the Government is up

to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based

public interest in disclosure is at its nadir."  Reporters Comm., 489 U.S. at 780.  Bartko thus

faces a steep threshold showing to overcome the privacy interests protected by Exemption 7(C).

He must "produce evidence that would warrant a belief by a reasonable person that the alleged

Government impropriety might have occurred," and because "[a]llegations of Government

misconduct are easy to allege and hard to disprove," this must be "a meaningful evidentiary

showing."  Favish, 541 U.S. at 174-75 (emphasis added) (quotation marks and citation omitted).

The Court does not believe Bartko has cleared this significant hurdle.  Although he

consistently asserts his belief in the government misconduct that he contends his FOIA request,

if properly handled, will expose – namely, prosecutorial withholding of exculpatory information

at his criminal trial – Bartko never identifies or produces any evidence of that misconduct.  He

attaches to his Cross-Motion five evidentiary exhibits: A letter from the IRS to USPIS, dated

March 14, 2013, forwarding a portion of one of Bartko's FOIA requests; a declaration of

Michael Franklin, attorney for the IRS, describing that agency's search for materials responsive

to Bartko's FOIA request; 147 pages of trial testimony of John Colvin at Bartko's criminal trial;

175 pages of trial testimony of Bartko's co-defendant, Darryl Laws, at the same trial; and

Bartko's own declaration.  See Cross-Mot., Exhs. A-E.  He never explains where or how these

materials evince government misconduct except to note, in a footnote, that the trial transcripts

are attached "[f]or Bartko to establish what records and information the government released

during [Bartko's criminal] court proceedings."  Cross-Mot. at 32 n.5.  Bartko elsewhere

proclaims, unhelpfully, that he "has made his position crystal clear not only in his prior briefings

. . . but in virtually every factual and legal argument advanced by Bartko in this case."  Id. at 28.

What may be pellucid in Bartko's mind remains opaque to the Court.

The closest Bartko comes to identifying evidence of government misconduct is his

assertion that "many of the released records demonstrate that Bartko's prosecutors and others

withheld favorable information and evidence from Bartko's defense."  Cross-Mot. at 33; see also

id. at 36 ("The documentary evidence filed by Bartko in the record of this action establishes far

more than a single incident of misconduct during his prosecution.").  Yet he fails to specifically

identify even one document with such demonstrative value – let alone "many."  At one point –
again, in a footnote – Bartko cites to his pending habeas proceedings in the Eastern District of
North Carolina and its "hundreds of pages of exhibits," but such a cursory gesture hardly
constitutes a "meaningful evidentiary showing."  Id. at 33 n.6; Favish, 541 U.S. at 175.  Even in
Bartko's earlier motions in this case, which he also blithely "incorporat[es] by reference," Cross-
Mot. at 13, he fails to clearly explain where in the record the Court might find evidence of
government misconduct.  These vague statements are simply not enough.  See Oguaju v. United
States, 378 F.3d 1115, 1117 (D.C. Cir. 2004) (holding that plaintiff had failed to make showing
required by Favish where he alleged that government informant committed perjury at his trial
because such assertion, even if stated in sworn affidavit of plaintiff, was too insubstantial to
establish likelihood of Government impropriety).

      Although the Court could have ended its analysis here, in order to ensure that the
government was not withholding any smoking guns, the Court conducted an *in camera* review of
all the withheld pages covered by Exemption 7(C).  Those materials did not contain any
information that appeared to reflect prosecutorial or agency misconduct.  Accord Bartko, 2015
WL 9272833, at *7 ("However noble these public interests theoretically may be, the records
sought simply do not fulfill those aims.  Having conducted its *in camera* review, the Court is
satisfied that . . . these records do not 'shed light' on the agency's conduct as Plaintiff
believes.").  The Court thus finds that the privacy interests asserted outweigh any potential public
interest that might be served by releasing the withheld materials. [1]

---

[1] Some pages listed in the December 2015 Vaughn Index as "Withheld" were actually released in part or in
full to Bartko.  See ECF No. 235 (Defendant's Notice of Submission *In Camera* and Errata); see also Cross-Mot. at
24-27 (describing released pages).

### 3. *Public-Domain Exception*

Notwithstanding his failure to prevail on the foregoing balancing of interests, Bartko asserts that at least some of the information withheld in this case is subject to disclosure under the public-domain exception to Exemption 7(C). Under that exception, "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999). For "if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes." Niagara Mohawk Power Corp. v. Dep't of Energy, 169 F.3d 16, 19 (D.C. Cir. 1999). However, "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 500 (1994). Under the public-domain doctrine, "the party advocating disclosure bears the initial burden of production; for were it otherwise, the government would face the daunting task of proving a negative: that requested information had not been previously disclosed." Cottone, 193 F.3d at 554.

As the Court has recently explained, see Bartko, 2015 WL 9272883, at *8, for Bartko to satisfy his burden, he must show that the information requested is as specific as the information previously released, that it matches that information, and that it has already been made public through an official and documented disclosure. See Neary v. Fed. Deposit Ins. Corp., 104 F. Supp. 3d 52, 60 (D.D.C. 2015) (citing Cottone, 193 F.3d at 553-54). In particular, Plaintiff must "'point[ ] to specific information in the public domain that appears to duplicate that being withheld.'" Cottone, 193 F.3d at 554 (quoting Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983)) (emphasis added). "The test is exacting because 'the fact that information

exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption.'" Neary, 104 F. Supp. 3d at 60 (quoting Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007)).

Here, Plaintiff argues that because USPIS already released information pertaining to third parties – including alleged co-conspirators and AUSA Clay Wheeler – that information "is already disseminated into the public domain." Cross-Mot. at 31. He further asserts that because some of these individuals testified during his trial, withholding further materials about them would be improper. Id. In the Government's view, however, Bartko has not satisfied the "'substantial'" burden of production because he has not identified "'the exact portions of the permanent public record he wishes to obtain.'" Opp. to Cross-Mot. at 25-26 (quoting North v. Dep't of Justice, 658 F. Supp. 2d 163, 173 (D.D.C. 2009)).

In Bartko's Motions here, as in his prior summary-judgment motions filed with other federal agencies in this case, Plaintiff has failed to meet this burden. Bartko has not identified the precise documents released by USPIS that are substantially identical to other documents the agency is withholding. In the briefings presently before the Court, he does not even identify the 37 individuals whose names have been released, nor has he specified what information about them, beyond their names, is in the public domain. Indeed, aside from the trial testimony he references, Bartko has not even tried to explain how the balance of the materials he seeks is "public" – most of which he says he learned about only through disclosures made in response to his FOIA requests – and is "preserved in a permanent public domain." Span v. Dep't of Justice, 696 F. Supp. 2d 113, 122 (D.D.C. 2010). Bartko has also failed to specify which USPIS records he believes are substantially identical to the already-released names or information.

Perhaps he thinks that vague references to the "37 names" and related materials suffice because he has described the documents in greater detail in other filings in this case.  At the risk of sounding like a broken record, the Court must again remind Bartko that "it is not the Court's job to cross-reference his half-dozen FOIA actions to determine precisely what was released, by whom, and when."  Bartko, 2015 WL 9272833, at *8.  Plaintiff has filed myriad briefs with multiple federal agencies in pursuit of these materials, and he simply cannot expect the Court to divine which ones might satisfy his burden of production here.

In short, "[i]t is the burden of a FOIA plaintiff, not a FOIA defendant" or the Court, to identify the specific information or the exact portions of a specific document that he believes are now in the public domain.  Span, 696 F. Supp. 2d at 122.  Absent specific identification of substantially identical records already released, the Court finds Plaintiff's public-domain argument does not alter the calculus that permits USPIS to withhold relevant records.  See Muslim Advocates v. Dep't of Justice, 833 F. Supp. 2d 92, 101-02 (D.D.C. 2011) ("While the D.C. Circuit has not established 'a uniform, inflexible rule requiring every public-domain claim to be substantiated with a hard copy simulacrum of the sought-after material[,]' it has recognized that 'it will very often be the case that some type of hard copy facsimile will be the only practicable way for a FOIA requester to demonstrate that the specific information he has solicited has indeed circulated into the public domain.' No such evidence has been provided in this case. . . . The Court, therefore, finds that plaintiff has failed to meet its 'initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'") (citations omitted).

C.  Segregability

Notwithstanding the foregoing determination that USPIS's invocation of Exemptions 6

and 7(C) was proper, it is well settled that an agency must "disclose all reasonably segregable,

nonexempt portions of the requested record(s)."  Roth v. Dep't of Justice, 642 F.3d 1161, 1167

(D.C. Cir. 2011) (quotation marks and citation omitted).  It is the government's burden to

demonstrate that no reasonably segregable material exists in such documents.  See Army Times

Publ'g Co. v. Dep't of Air Force, 998 F.2d 1067, 1068 (D.C. Cir. 1993).  The government must

"provide[ ] a 'detailed justification' and not just 'conclusory statements' to demonstrate that all

reasonably segregable information has been released."  Valfells v. CIA, 717 F. Supp. 2d 110,

120 (D.D.C. 2010) (citing Mead Data Central, Inc. v. Dep't of Air Force, 566 F.2d 242, 261

(D.C. Cir. 1977)); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C.

Cir. 1996) (determining government affidavits explained non-segregability of documents with

"reasonable specificity").  "Reasonable specificity" can be established through a "combination of

the Vaughn index and [agency] affidavits."  Johnson v. Exec. Office for U.S. Attorneys, 310

F.3d 771, 776 (D.C. Cir. 2002).

Here, Bartko is not convinced that the agency has adequately segregated exempt

materials, and he specifically challenges the pages of responsive materials that the agency

withheld in full.  USPIS's declarations on this point establish that the contrary is true.

Tammy Warner, the agency's FOIA Manager and Acting Information Disclosure

Specialist, explains:

> I have made every effort to segregate material that may be disclosed
> entirely or with minimal redactions in accordance with the
> exemptions discussed herein. . . .  I have determined that only those
> portions that really need to be withheld remained undisclosed.

Warner Decl., ¶ 23; see also Williams Decl., ¶ 9 (explaining that only where "it was likely that disclosure would enable plaintiff to identify [third-party] individuals" and "[t]hose individuals' privacy could not be protected by simply redacting their names and/or other identifying information" were records withheld); Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 903 F. Supp. 2d 59, 70 (D.D.C. 2012) (finding that agency had carried its burden of segregation where it declared that "[f]or records withheld in their entirety, there was no reasonably segregable material[,] or nonexempt information amounted to essentially meaningless words and phrases").

USPIS's declarations are corroborated by the agency's latest Vaughn Index. See Opp. to Cross-Mot., Attach. 2 (December 2015 Vaughn Index). The most recent one it submitted in December 2015 is quite thorough, in contrast to the slapdash one the agency submitted with its earlier briefing. Compare id. at 2 (Document Number 61: "case subject, Postal Inspector, victim's names and comments withheld would reveal the identity of the victim") with ECF No. 145, Attach. 3 (January 2015 Vaughn index) at 2 (Document Number 61: "third-party document"). The December 2015 Vaughn Index notes that a number of pages were released in part, and such partially withheld materials are strong indicators of adequate segregation. See, e.g., December 2015 Vaughn Index at 2 (Document 51: "reference to Bartko, released in part"); see also Sennett v. Dep't of Justice, 962 F. Supp. 2d 270, 280 (D.D.C. 2013) ("The Bureau, moreover, deserves the benefit of the doubt when it has painstakingly segregated material on the produced documents . . . ."). The December 2015 Index, moreover, clearly identifies the exemptions invoked and the relevant privacy interests that justify each specific withholding. See, e.g., December 2015 Vaughn Index at 7 (Document 304: "Federal employee and case subjects [sic] names, parties conducting interview, and statement withheld"); id. at 8 (Document

346: "unknown third-party names, witness names, name of Asst. US Atty, address and statements withheld").

The Court, in an abundance of caution, also undertook its own *in camera* review of the 238 pages withheld.  After conducting such review, the Court is satisfied that no additional materials need be released, for "[t]he non-exempt portions of these documents that have been redacted are inextricably intertwined with exempt portions and they need not be further segregated." Am. Immigration Council, 21 F. Supp. 3d at 83 (quotation marks and citation omitted).  In sum, USPIS's declarations, its detailed Vaughn Index, and the Court's own *in camera* examination of the withheld materials all demonstrate that the agency has fulfilled its obligation to release reasonably segregable nonexempt materials.

D.  Discovery

Finally, Bartko requests limited discovery because "the continuing delays by the USPIS in complying with the Court's orders . . . give rise to [] concerns that the USPIS is not processing all responsive records in good faith."  Mot. for Disc. at 3.  He acknowledges that discovery in a FOIA action is typically very limited, but believes this to be "the rare circumstance" where it is warranted.  See id.  USPIS, believing its search to be adequate, responds that discovery, however limited, is unnecessary.  See Mot. at 20.

"Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." Baker & Hostetler LLP v. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation marks and citation omitted); see also Ocasio v. Dep't of Justice, 67 F. Supp. 3d 438, 440 (D.D.C. 2014) ("[D]iscovery is generally disfavored in FOIA cases.") (quotation marks and citation omitted).

Discovery is warranted if USPIS's declarations <u>at this stage in the litigation</u> are insufficiently detailed and evince bad faith.  Even if its <u>prior</u> declarations in the case "contain discrepancies and inconsistencies and have been deemed by the Court to be incomplete" or "prepared . . . in bad faith," as Plaintiff alleges, <u>see</u> Mot. for Disc. at 4, discovery is not appropriate if the agency's <u>most recent</u> submissions demonstrate a good-faith attempt to locate and release all responsive, not-exempt materials.  As the Court has already explained, <u>see</u> Section III.A, *supra*, USPIS's third Motion for Summary Judgment and its accompanying declarations satisfy that requirement.  The Court does not believe Bartko has demonstrated ongoing deficiencies or otherwise "made a sufficient showing that the agency acted in bad faith" in processing his request or complying with the Court's Orders in this case.  <u>Justice v. IRS</u>, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (quotation marks and citation omitted).  Given that "discovery is an extraordinary procedure in a FOIA action," <u>Thomas v. Dep't of Health and Human Servs.</u>, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008), the Court will deny Bartko's Motion.  <u>See also</u> <u>Alexander v. FBI</u>, 188 F.R.D. 111, 115-16 (D.D.C. 1998) (FOIA plaintiff not entitled to discovery as to scope of agency's searches based solely on Plaintiff's suggestion that its "history of stonewalling" and conduct in this case were improper).

## IV.   Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order holding that Plaintiff's Motion for Discovery is denied; Defendant's Motion for Summary Judgment is granted; and Plaintiff's Cross-Motion for Summary Judgment is denied.

<u>/s/ *James E. Boasberg*</u>
JAMES E. BOASBERG
United States District Judge

Date: <u>March 3, 2016</u>