UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY BARTKO,<br><br>　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>　　Defendants. | Civil Action No.  13-1135 (JEB) |

## MEMORANDUM OPINION

In an effort to recover from federal agencies documents that he believes may help him overturn his convictions for conspiracy, mail fraud, and selling unregistered securities – for which he is presently serving a 23-year sentence – *pro se* Plaintiff Gregory Bartko has filed a slew of Freedom of Information Act requests with, *inter alia*, the Department of Justice, the Federal Bureau of Investigation, the United States Postal Inspection Service, and the Securities and Exchange Commission.  A compendium of the Court's previous Opinions related to these requests would number in the hundreds of pages; this Opinion, like the seventh novel in the *Harry Potter* series, brings a much-anticipated end to a many-layered saga.

The only extant request is one Bartko filed with the Securities and Exchange Commission.  Although, in an earlier round of briefing, the Court granted summary judgment to the SEC on a number of issues – including the propriety of some of the FOIA exemptions it had invoked – it also held that material factual disputes remained as to the adequacy of the agency's search for responsive records.  The SEC now contends in its renewed Motion for Summary Judgment that its most recent search is sufficiently comprehensive.  Bartko, on the other hand,

continues to believe that the SEC has not searched for all records responsive to his narrowed request, that the agency is not interpreting that request in good faith, and that it must search other files to satisfy its obligations under FOIA. Concurring that the Commission has demonstrated that its search was reasonable and adequate, the Court will grant its Motion and deny Bartko's Cross-Motion.

**I.    Background**

As mentioned, the Court has issued numerous Opinions about Bartko's multiple requests to myriad agencies. See, e.g., Bartko v. Dep't of Justice, 2016 WL 829967 (D.D.C. Mar. 3, 2016); Bartko v. Dep't of Justice, 2015 WL 9272833 (D.D.C. Dec. 18, 2015). As only his SEC request is at issue here, the Court will limit its factual recitation to that agency. In addition, since a previous Opinion recounted in detail the facts related to the SEC request, see ECF No. 107 (Memorandum Opinion of October 8, 2014), the Court will only summarize them here.

Bartko filed his first FOIA request with the SEC on May 11, 2011, seeking records in six different categories. Id. at 5. The request was aimed at discovering evidence that would lend credence to his belief that SEC attorney J. Alex Rue had improperly colluded with Assistant United States Attorney Clay Wheeler in Bartko's criminal prosecution. Id. at 6. The SEC's Office of FOIA Services (OFS) searched records in its Name Recognition Search Index for responsive materials and identified two matters in the SEC's Atlanta Regional Office (ARO) as possibly responsive: one file labeled In the matter of Mobile Billboards of America (termed by both parties "the MBA file") containing materials related to an investigation initiated in 2004, and another labeled In the matter of Bartko ("the Bartko file") containing materials related to an administrative enforcement proceeding against Plaintiff. Id. at 6-7. The Regional Office confirmed that these were the only potentially responsive files in existence. Id. at 7.

In June 2011, the SEC informed Bartko that it had identified potentially responsive materials in the MBA file, but that the file was voluminous. At the urging of the agency and to expedite the processing, Plaintiff narrowed his FOIA request to "any record that relates to the SEC's inquiry of Capstone Private Equity Bridge & Mezzanine Fund, LLC, a Delaware limited liability company between January 1, 2005 and the present date, conducted by any staff member of the Atlanta, GA Regional Office of the SEC." Id. at 7-8 (citation omitted). OFS then searched for the term "Capstone" and found potentially responsive records. Id. at 8. The agency was, however, somewhat contradictory about whether these records were in the Bartko file or the MBA file. Id.

After some time, Bartko learned that his FOIA request had stalled there. Id. at 8-9. He thus filed suit in November 2013, challenging the SEC's response. Id. at 2. Bartko then moved for summary judgment, and the agency cross-moved while simultaneously completing its processing of Plaintiff's FOIA request and transmitting to him 1290 pages of records found within the MBA file. Id. The dueling motions focused on two issues: whether the SEC had properly invoked certain exemptions in withholding other documents and whether it had adequately conducted its search.

While the Court found that Bartko's first contention was without merit, it did concur with him that the Commission had not yet carried its burden to demonstrate that its search had been adequate. See id. at 9. More specifically, the Court directed the SEC to "demonstrate[] why the Bartko file was not searched for records responsive to Plaintiff's narrowed request." Id. at 13. At the same time, the Court rejected Bartko's argument that the Office of FOIA Services should have looked outside of the Atlanta Office for responsive records, including by searching other regional offices. Id. at 12. It also found unavailing Plaintiff's assertion that his knowledge of

"1,000 pages of records" that he had delivered to the Atlanta Office himself – but which were not released as part of the agency's production – indicated that the SEC's search was inadequate. Id. at 11-12.

Having now searched the Bartko file, as instructed, the SEC has renewed its Motion for Summary Judgment. See ECF No. 252. Plaintiff, again, has cross-moved for the same. See ECF No. 254.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the

functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations, which "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

**III.     Analysis**

In their Cross-Motions, the parties disagree about precisely what steps the SEC took in processing Bartko's request and searching for responsive records, facts central to the remaining issue – *viz.*, the adequacy of the agency's search.  They do not, however, disagree that the adequacy-of-the-search question is the only remaining one for the Court to decide, nor do they part ways about the legal standards governing that search.  For it is well settled in this Circuit that "[a]n agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  It bears noting that the adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  See id.  On the other hand, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.  Most importantly, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg, 745 F.2d at 1485.

The Court begins its adequate-search inquiry where it left off in its last Opinion – namely, with the SEC's decision not to search the Bartko file – and then examines the parties' additional dispute about whether the agency should have looked elsewhere.

A.  The Bartko File

By way of reminder, the Court's earlier concern with the SEC's search had arisen from the agency's shifting position about the location of potentially responsive materials.  More specifically, the Commission's Office of FOIA Services (OFS) had first determined that the only files responsive to Plaintiff's narrowed request would be found in the Bartko file, but later the Office of the General Counsel came to the opposite conclusion, determining that the only responsive files were contained in the MBA file.  See Mem. Op. at 9.  While many documents in the MBA file were released, the Court required the Commission to explain why the Bartko file was not searched.  Id. at 13.

The SEC's position concerning the Bartko file in its present Motion is more tortured than necessary; "Because the Bartko file was not compiled in connection with an investigation of Capstone and in fact did not contain any documents from an investigation of Capstone, the SEC did not need to search the Bartko file to conduct an adequate search."  MSJ at 7.  Such an argument conflates two separate points: (1) there was no need to look in the Bartko file because it was unlikely to contain responsive materials and (2) an actual review of the file revealed no responsive materials.

Fortunately, the Court need not tease this apart, as a supporting declaration explains that the agency wisely went ahead and reviewed the Bartko file, eventually confirming that it does not contain records relating to an inquiry of Capstone.  Specifically, the Atlanta Regional Office attorney responsible for the Bartko matter, Robert Gordon, avers that he himself conducted the

7

search: "I have reviewed ARO files for In re Bartko. From that effort, I can confirm that they do not contain documents relating to an SEC inquiry or investigation into whether Capstone was violating the law." Declaration of Robert K. Gordon (ECF No. 252, Attach. 2), ¶ 8. He further states that the ARO's file in the Bartko matter "is limited to certain records that were publicly filed in the criminal action that led to Mr. Bartko's conviction." Id., ¶ 7.

This is enough to carry the agency's adequate-search burden. As the D.C. Circuit has explained, "In adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits." Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)). The Court may thus rely on Gordon's declaration, so long as it is "'relatively detailed' and nonconclusory and . . . submitted in good faith." Id. (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)). Typically, "[a]gency declarations in this regard are afforded a presumption of good faith." Defs. of Wildlife v. U.S. Dep't of Interior, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (citing SafeCard Services, Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "An adequate affidavit can be rebutted only 'with evidence that the agency's search was not made in good faith.'" Id. (quoting Trans Union LLC v. Fed. Trade Comm'n, 141 F.Supp.2d 62, 69 (D.D.C. 2001)). Because Plaintiff has not suggested that Gordon's declaration – and specifically his statement that he searched the Bartko file and determined that it did not contain materials responsive to the FOIA request – was made in bad faith, the Court is entitled to defer to it. Regardless of whether the SEC's decision not to search the Bartko file would have been justified in the first instance, the agency's submissions now demonstrate that it has adequately searched that file and that no responsive materials exist therein.

B.  Files Not Produced

Although Plaintiff does not challenge the agency's search of the Bartko file, he nevertheless maintains that the SEC's overall search was inadequate because it failed to produce a number of responsive records that he claims were in Defendant's possession at the time of the search.  See Cross-Mot. at 8-9.  To be sure, "[i]f the requester produces countervailing evidence placing the sufficiency of the identification or retrieval procedures genuinely in issue, summary judgment is inappropriate." Penny v. Dep't of Justice, 712 F. Supp. 2d 18, 20-21 (D.D.C. 2010) (citing Founding Church of Scientology, 610 F.2d at 836).  "By now, however, Bartko is well aware that identifying a handful of documents that an agency failed to uncover does not, in itself, demonstrate that a search was inadequate." Bartko, 2016 WL 829967, at *5 (citing Boyd v. Criminal Div. of Dep't of Justice, 475 F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search."); Espino v. Dep't of Justice, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) ("[A] search is not inadequate simply because it failed to turn up a document that [plaintiff] believes must exist, or even a document he knows to exist.") (citation omitted)).

In his Response to Defendant's Statement of Material Facts, Bartko has included a table listing what he believes to be responsive, non-exempt documents that "have never been identified or released to Bartko in this FOIA action." Pl. Resp. SOF (ECF No. 254, Attach. 7), ¶ 9 (Table 1).  These materials, he asserts, were previously produced to him by Celia Jacoby, Senior Counsel at the SEC, in response to a subpoena related to his sentencing hearing in his criminal case.  See id., ¶ 8.

Bartko, however, tells the Court nothing about how the documents listed in his table are or might be responsive to his narrowed FOIA request.  That modified request, in case the reader

9

has forgotten, sought "any record that relates to the SEC's inquiry of Capstone Private Equity Bridge & Mezzanine Fund, LLC, a Delaware limited liability company between January 1, 2005 and the present date, conducted by any staff member of the Atlanta, GA Regional Office of the SEC." Mem. Op. at 8.

The SEC, in fact, did not believe any of the documents he now points to were related to "an inquiry citing Capstone [Fund]." March 29, 2012, Letter from Celia Jacoby in Response to Subpoena (ECF No. 254, Attach. 1) at 1. Rather, Jacoby described the materials she disclosed to Bartko in connection with his criminal case as being "materials that mention Capstone [Fund] or were obtained from Mr. Bartko or other representatives on his or Capstone [Fund]'s behalf." Id. This indicates that the documents are not responsive to Bartko's narrowed FOIA request, and Plaintiff's description of them lends further support to that conclusion. For instance, it is unclear, and Plaintiff never even attempts to explain, how the sixth item in his table, described as "$30,000 refund letter to Sharon Glover, including check, FED X shipping label and signed Subscription Documents," Table 1, is responsive to his request concerning the "SEC's inquiry of Capstone [Fund]." Mem. Op. at 8. The other items in the table are similarly untethered to the narrow terms of the request.

That Bartko has identified other information of interest to him that the SEC did not produce does not render the agency's FOIA search inadequate, especially where he has not shown that such material is responsive to his request. After all, the agency's obligation was not to search for records related to Capstone Fund generally, but rather to locate a smaller subset of those records, as specified by Bartko's own request. The Court, therefore, is not persuaded that Bartko has identified any responsive documents the SEC should have located and produced;

even if he had, such documents alone would not necessarily render the SEC's search inadequate. See Boyd, 475 F.3d at 391.

    C.  Third File

Bartko's next, related contention is that responsive materials may exist outside of the MBA file or the Bartko file in "some other storage file moniker." Cross-Mot. at 9. More specifically, he believes that "responsive records repose in the SEC's file associated with Bartko's broker-dealer, Capstone Partners, L.C." Id. at 19. He asserts that the SEC investigated Capstone Partners from June 28 to September 29, 2005, and that the agency maintained a separate file and file number for that investigation. See id. Yet the SEC emphasizes that he also acknowledges, see id., that Capstone Partners is not the entity that is the subject of Bartko's narrowed request. Nevertheless, because Capstone Fund "was a related party to" Capstone Partners, Bartko believes that there must be records related to the SEC's investigation of the Fund in its file for the Partners. Id. at 19-20.

As Bartko well knows, however, "[t]here is no requirement that an agency search every record system." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Instead, the agency is merely "required to explain in its affidavit[s or declaration] that no other record system was likely to produce responsive documents." Id.; see also id. ("A reasonably detailed affidavit . . . averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.").

In his original declaration, Jeffery Ovall of the SEC's OFS did precisely that, averring that

> OFS staff determined that all of the requests sought information relating to SEC investigations of possible violations of the federal securities laws. Using the names and other search criteria in the May 11 Request, OFS searched records in its Name Recognition Search Index (NRSI). From that effort, OFS identified records of two matters in the SEC's Atlanta Regional Office (ARO) as potentially responsive to the request. <u>After consulting with ARO Staff, OFS concluded that no other potentially responsive files existed</u>.

June 17, 2014, Declaration of Jeffery Ovall (ECF No. 71, Attach. 3), ¶ 6 (emphasis added). The Court previously required the SEC simply to ensure that both of the files the agency had identified as responsive – *i.e.*, <u>Bartko</u> and <u>MBA</u> – were, in fact, searched. The Court did not then and does not now find Ovall's declaration to be insufficient, as it clearly describes the agency's search process and identifies all the locations of potentially responsive materials. See <u>Oglesby</u>, 920 F.2d at 68; see also, e.g., <u>Toolasprashad v. Bureau of Prisons</u>, 474 F. Supp. 2d 14, 15 (D.D.C. 2007) (FOIA search was adequate where agency representatives "have adequately described the searches and have averred that all files likely to contain responsive records have now been searched"); <u>Hart v. Dep't of Justice</u>, 648 F. Supp. 2d 113, 117 (D.D.C. 2009) (granting summary judgment to agency based on declaration averring that "the most likely, and only, place where [responsive] records" could be located was searched).

Although Bartko hypothesizes that another file might contain responsive records, he offers no evidence, beyond his suppositions, that the Atlanta Regional Office even had a file on Capstone Partners during the relevant time period and presents only the barest of explanations as to why he believes such a file, if it did exist, might contain material related to an inquiry of Capstone Fund. More importantly, he does not challenge the agency's methodology – either the use of the NRSI or the specific search terms employed – or offer a more appropriate alternative approach to the search. The SEC is simply not obligated to search every file that Plaintiff

believes may contain responsive materials after it has already demonstrated that its search methodology was reasonable. In fact, in Bartko's previous briefing he argued that the SEC ought to have searched the files of its regional offices outside of Atlanta as well, based on a similarly speculative hypothesis that responsive materials might be contained therein. The Court found that such a hypothesis was "not enough to render OFS's search inadequate. . . . An agency 'need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain.'" Mem. Op. at 12 (quoting Kowalczyk v. Dep't of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996)). Bartko's proffer of additional locations where responsive materials may reside has again failed to clear this threshold.

    D.  Other Arguments

Bartko raises two additional contentions the Court must briefly address before this matter is put to bed. First, he engages in a lengthy digression about the testimony of various witnesses at his criminal trial. See Cross-Mot. at 21-28. This, he asserts, includes testimony from at least one SEC attorney who "admitted at trial that he began investigating Bartko and the Capstone Fund." Id. at 23. In essence, Bartko would like the Court to parse this and other testimony from his criminal trial to determine whether the SEC is hiding an investigation or inquiry into Capstone Fund, and, if so, to compel the production of documents related to that investigation. But this is a far cry from the Court's role in determining whether the agency's search was adequate.

At best, Plaintiff's position amounts to an argument that the SEC conducted its search in bad faith. To advance such a stance, however, Bartko must "present some evidence of bad faith on the part of the Government – or non-speculative evidence regarding the existence of documents – in order to defeat the Government's motion for summary judgment as to the

search."  Garcia v. Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 367 (S.D.N.Y. 2002) (emphasis added).  Bartko's brief is riddled with speculative assertions – bordering on conspiracy theories – unsupported by record citations.  See, e.g., Cross-Mot. at 25 ("Bartko's counsel asked [SEC attorney] Rue directly if he was trying to set Bartko up in some way, and although Rue did not use those exact words in his answer, the implication was made.  Rue ended his testimony by validating the sheer volume of records he compiled during his inquiry of the Capstone Fund.").  Such statements, without any support, hardly satisfy Plaintiff's burden of production with regard to a showing of bad faith by the SEC.

       That Bartko believes the interactions he had with Rue constitute an "inquiry" of Capstone Fund does not mean that the SEC considers or should consider those interactions such an inquiry within the meaning of the narrowed FOIA request, or that they generated materials responsive to that request.  For the SEC was not required to interpret the word "inquiry" in Bartko's request to include all informal interactions by SEC attorneys that may have touched on Capstone Fund, as Bartko now urges.  "Though an agency has a duty to construe a FOIA request liberally, there is no requirement that the agency must interpret a request more broadly "than the description reasonably contained in the request[ ]."  Hooker v. U.S. Dep't of Health & Human Servs., 887 F. Supp. 2d 40, 52 n.11 (D.D.C. 2012), aff'd, 2014 WL 3014213 (D.C. Cir. May 13, 2014) (internal quotation marks and citations omitted).  Absent some evidence that corroborates Bartko's musings that Rue's interactions with him were "a ruse that enabled the [SEC] ARO to conduct an inquiry/investigation of the Capstone Fund" that the agency is now seeking to hide, see Cross-Mot. at 26, the Court cannot conclude that the SEC's representations in its Motion were made in bad faith or that its search here was inadequate.

Finally, Bartko offers one final hypothetical argument.  He posits that once OFS properly reprocesses his FOIA request in accordance with his suggestions, it will identify other responsive materials and thus may seek to claim that Exemption 8 authorizes their withholding.  Hoping to head the agency off at the pass, he presents a rebuttal as to that exemption's applicability.  See Cross-Mot. at 28.  Of course, this issue is both legally premature and practically impossible for the Court to resolve, given that no materials that might fall under Exemption 8 have been identified, nor has the SEC offered any justification for any potential invocation of such exemption.  The Court therefore declines to speculate as to whether the SEC might properly withhold under Exemption 8 – or any other exemption – records that have not been produced and may not exist.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment, deny Plaintiff's Cross-Motion for Partial Summary Judgment, and enter judgment for the Securities and Exchange Commission.  A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 26, 2016