# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY BARTKO,

   Plaintiff,

   v.                                    Civil Action No. 13-1135 (JEB)

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

   Defendants.

## MEMORANDUM OPINION

*Pro se* Plaintiff Gregory Bartko's series of Freedom of Information Act suits resumes

here against assorted Department of Justice entities. Following the recent D.C. Circuit opinion

— Bartko v. U.S. Dep't of Justice, 898 F.3d 51 (D.C. Cir. 2018) — Defendants handed over

certain documents and also conducted a supplemental search that resulted in the release of

additional materials. Believing that they have finally satisfied their FOIA obligations,

Defendants now file a Motion for Summary Judgment. But Plaintiff is not ready to free them

from this labyrinth just yet. Bartko thinks that there remain inappropriate redactions, that

Defendants owe him further documents, and that the new information provided warrants a

renewed consideration of other withheld material. The Court will grant summary judgment to

the Office of Professional Responsibility and the Executive Office for United States Attorneys,

but the Federal Bureau of Investigation has some remaining work to do.

## I.      Background

Plaintiff, who is currently serving a 23-year prison sentence for fraud, has submitted

multiple FOIA requests to FBI, OPR, and EOUSA. The information Bartko seeks mostly

concerns his criminal trial, the alleged misconduct by Government employees — such as Assistant U.S. Attorney Clay Wheeler — in the course of the trial, and the Government's handling of that misconduct. This particular spat involves a thumb drive from the FBI and a handful of document redactions by OPR and EOUSA.

For the majority of the disputes, today's Opinion is not their premiere in front of this Court. The first matter concerns an FBI thumb drive, which this Court previously addressed, finding that it was properly withheld under Exemption 3. See Bartko v. U.S. Dep't of Justice, 2015 WL 9272833, at *4 (D.D.C. Dec. 18, 2015), aff'd in part, rev'd in part, 898 F.3d 51 (D.C. Cir. 2018). On August 3, 2018, the D.C. Circuit reviewed this decision and ordered this Court to reconsider that ruling in light of an intervening D.C. Circuit opinion, Labow v. U.S. Dep't of Justice, 831 F.3d 523 (D.C. Cir. 2016). See Bartko, 898 F.3d at 73. The Court moves forward with those marching orders today.

Portions of the OPR documents now before the Court were also the subject of prior determinations by this Court and the D.C. Circuit. This Court concluded in 2015 that a series of OPR documents was properly withheld under Exemptions 5 and 7(C). See Bartko v. U.S. Dep't of Justice, 128 F. Supp. 3d 62, 72–73 (D.D.C. 2015). The D.C. Circuit — in the same August 3, 2018, Opinion — disagreed with this Court's ruling on Exemption 7(C) and ordered the release of documents previously protected by that exemption. See Bartko, 898 F.3d at 70. OPR promptly relinquished both the eight records previously shielded by 7(C) — OPR-1, OPR-2, OPR-4, OPR-5, OPR-27, OPR-28, OPR-42, and OPR-43 — as well as some bonus documents — namely OPR-000001, OPR 3, OPR-7–10, and OPR-39. See ECF No. 278 (Def. MSJ) at 3–4; Def. MSJ, Attach. 5 (Stmt. of Facts), ¶¶ 1–9; Def. MSJ, Attach. 4 (Declaration of Margaret S. McCarty), ¶¶ 3–5. Today Plaintiff again contests the Exemption 5 redactions. See ECF No. 280

(Pl. Cross-Mot.) at 19–20. He also brings to the attention of the Court several documents that OPR has withheld under Exemption 5, which avoided explicit designation in the prior Opinions. See ECF No. 283 (Pl. Reply) at 3–4.

Finally, there are two issues between the parties that were not part and parcel of the D.C. Circuit opinion: documents unearthed in a supplemental OPR search and nine pages redacted by EOUSA. Following the D.C. Circuit opinion, OPR conducted another search, which revealed 126 pages of new records that reference AUSA Wheeler. See McCarty Decl., ¶¶ 6–14. It promptly turned over the bulk of these documents, withholding 25 pages, some in full and most in part. Id., ¶ 15. Bartko claims more should have been turned over. The remaining nine pages redacted by EOUSA are not unfamiliar to this Court. Those redactions were fully addressed — and found to be proper — in two of this Court's prior decisions. See Bartko v. U.S. Dep't of Justice, 2019 WL 2996534, at *3 (D.D.C. July 9, 2019); Bartko v. U.S. Dep't of Justice, 2018 WL 4608239, at *10–11 (D.D.C. Sept. 25, 2018). Still dissatisfied, Bartko wants to re-hash this issue one more time.

## II.      Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment, and the agency bears the ultimate burden of proof. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007); see also U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). And "[u]nlike the review of other agency action[,] . . . the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.    Analysis

Plaintiff seeks a thumb drive from the FBI.  He also hopes the Court will reconsider withholdings OPR made under Exemption 5 and strip the protection of Exemption 6 from its newly released documents.  Bartko's final contention concerns nine pages that have been partially or fully redacted by EOUSA.  The Court will address each issue in turn.

#### A.    FBI Thumb Drive

First up are the contents of a thumb drive that was produced in response to "a Grand Jury Subpoena to a third party individual and contain[s] specific documents sought by the Grand Jury." Bartko, 898 F.3d at 72 (citation and internal quotation marks omitted).  The FBI has withheld the documents, asserting Exemptions 3, 6, and 7(C).  See ECF No. 128 (Sixth Supplemental Declaration of David Hardy), ¶¶ 4–7.  This Court in 2015 initially held that the thumb-drive records were properly withheld, relying primarily on Exemption 3.  After viewing the documents *in camera*, it concluded that it was

> satisfied that the records were properly withheld as containing information about the names of recipients of federal grand-jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand jury in response to such a subpoena.  In light of this, the FBI appropriately declined to articulate the precise contents of the thumb drive so as to avoid "reveal[ing] statutorily protected Federal Grand Jury information."

Bartko, 2015 WL 9272833, at *4 (citations omitted).  While it focused primarily on Exemption 3, the Court mentioned that, in the alternative, Exemption 7(C) would also authorize the withholding: "[E]ven if Exemption 3 did not protect the thumb drive, the documents located there would be covered under Exemption 7(C)." Id. at *7.

After this Court's decision, the Court of Appeals took up a plethora of Bartko's claims.  Regarding the thumb drive specifically, it remanded for further consideration of Exemption 3

given the intervening case of <u>Labow</u>, 831 F.3d 523.  <u>See</u> <u>Bartko</u>, 898 F.3d at 73.  The <u>Labow</u>

decision clarified that Exemption 3 protects only those documents that "would reveal to the

requester that they had been subpoenaed," as opposed to documents that "would not necessarily

reveal a connection to a grand jury."  <u>Id.</u>  (quoting <u>Labow</u>, 831 F.3d at 529).  The crucial

question when considering whether Exemption 3 is appropriate is thus "whether the release of

the documents subpoenaed by the grand jury would reveal something about the grand jury's

investigation."  <u>Labow</u>, 831 F.3d at 530.

 After remand from the Court of Appeals, the FBI first agreed to process the thousands of

documents from the thumb drive.  It noted that this would take a "significant amount of time"

and agreed to report to the Court about its progress every 90 days.  <u>See</u> ECF No. 271 (Def. Resp.

Mot. to Compel) at 3.  The FBI, however, soon reversed course.  On February 27, 2019, it

informed the Court of its epiphany that it no longer had any "further obligations concerning the

thumb drive" and would instead move for summary judgement on this issue.  <u>See</u> ECF No. 277

(Def. Status Report) at 2.

 In doing so, the FBI now argues that the appellate court's decision did not disrupt this

Court's holding that the thumb drive was validly withheld.  The agency argues that because the

Circuit's decision explicitly discussed only Exemption 3, the Court's original ruling that

Exemption 7(C) could also support the withholding remains intact.  <u>See</u> Def. MSJ at 16.

According to that logic, an analysis about the applicability of Exemption 3 is unnecessary, given

that Exemption 7(C) alone could support nondisclosure of the thumb drive.  <u>See, e.g.,</u> <u>Simon v.</u>

<u>Dep't of Justice</u>, 980 F.2d 782, 785 (D.C. Cir. 1992) (declining to discuss other FOIA

exemptions after finding one exemption applied).

Although this seems a facially reasonable position, the Court disagrees. It would be anomalous for the Court of Appeals to have waded into the Exemption 3 issue totally without cause. The Court can only conclude that the Court of Appeals found this Court's 7(C) discussion to be *dicta* or else worthy of reconsideration. The FBI admitted as much when it first agreed to process the thumb-drive documents. The Court will permit the Bureau either to process the documents or to renew its Motion for Summary Judgement, in which it may argue either that Exemption 3 still applies or that 7(C) does.

The Court of Appeals indeed praised the FBI for its application of 7(C) to a different set of documents. There, it noted that the Bureau's application was "measured and carefully calibrated," as it released 1,099 pages in full or in part and withheld 134 pages, but also identified "eight categories of names and identifying information that it withheld." Bartko, 898 F.3d at 71. Regarding the thumb drive, however, the FBI has consistently withheld the contents in full. If it intends to rely on 7(C), it should therefore explain to the Court why wholesale withholding is appropriate.

B. OPR Records

1. *Exemption 5*

Consistent with the D.C. Circuit's opinion, OPR continues to withhold certain documents largely under the deliberative-process privilege of Exemption 5. Id. at 70; Bartko, 128 F. Supp. 3d at 72–73; see also ECF No. 280 (Pl. Cross-Mot.) at 19–20. Plaintiff is unremitting in his crusade to obtain these documents, but the issue is a dead letter. Notwithstanding the D.C. Circuit decision upholding the application of Exemption 5, he insists that OPR-25, OPR-26, OPR-29–38, and OPR-40–41 have been improperly withheld. See Pl. Cross-Mot. at 19–20. The Court is unconvinced.

Plaintiff claims OPR's reprocessing and releasing of new documents warrants a renewed consideration of the withheld documents and a revitalization of his government-misconduct-exception argument. See Pl. Cross-Mot. at 17–18. In order for this to be the case, Bartko must "provide an adequate basis for believing that [the documents] would shed light upon government misconduct." Hall & Assocs. v. EPA, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) (alteration in original) (citations omitted). This Court already found through its prior in camera review that these documents do not contain any information revealing government misconduct. See Bartko, 128 F. Supp. 3d at 73–74. The disclosure of other documents, which may make the issue of government misconduct more "prominent," see Pl. Cross-Mot. at 18, does not alter the content of these documents. A renewed review — which would yield no different result for Plaintiff — is thus inappropriate. The previously addressed redacted documents — OPR-25, OPR-26, OPR-29–37 — therefore remain within the coverage of Exemption 5.

Yet, there are some documents that have not been released and that the Court has not explicitly addressed: OPR-38, OPR-40, and OPR-41. See Pl. Reply at 3–4; see also ECF 162 (Def. MSJ), Attach. 1 (Declaration of Ginae Barnett and Vaughn Index) at 38 (Tab D); see also Bartko, 128 F. Supp. 3d at 73; Stmt. of Facts, ¶¶ 1–9. The Court has now reviewed in camera these documents, which include an email exchange and attachments, the subject of which is the editing of the decision to close the investigation into AUSA Wheeler. See also Tab D at 9–10. Despite escaping prior explicit designation, these documents fall squarely within Exemption 5's deliberative-process privilege and will therefore elude Bartko's grasp.

The deliberative-process privilege protects the "decision making processes of government agencies." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (citations omitted). For an agency to claim this privilege, the documents in question must meet two

requirements: (1) they must be predecisional and (2) they must be deliberative. Judicial Watch, Inc. v. U.S. Dep't of Def., 847 F.3d 735, 739 (D.C. Cir. 2017) (citation omitted). "A document is predecisional if it precedes, in temporal sequence, the decision"; thus "a court must be able to pinpoint an agency decision or policy to which the document contributed." Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (citation and internal quotation marks omitted); see also Judicial Watch, Inc, 847 F.3d at 739 (explaining that record is predecisional if it is "generated before the adoption of an agency policy") (citation omitted). "[A] document is deliberative if it is "a part of the agency give-and-take — of the deliberative process — by which the decision itself is made." Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895, 899 (D.C. Cir. 2015) (citation omitted). Draft documents are a standard document type that meets these requirements. See Bloomberg, L.P. v. U.S. Securities and Exchange Commission, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

In the present circumstance it is easy to identify the final policy to which the documents in question contributed: the final drafts memorialized in OPR-42 and OPR-43. Defendant thus undoubtedly considered these revisions prior to rendering notice that it was closing the investigation into AUSA Wheeler. The deliberative prong is also an easy call for the Court. The redlining and editing of these documents (while largely cosmetic) "reflect the give-and-take of the consultative process" that make a document deliberative. Judicial Watch, Inc., 847 F.3d at 739 (citation omitted). Given that he already possesses the final drafts of these documents, see Stmt. of Facts, ¶ 2, Plaintiff cannot believe he is missing much.

### 2. *Exemption 6*

The next dispute between the parties concerns 23 pages of records partially redacted under Exemption 6. These documents surfaced when, following the D.C. Circuit's opinion, OPR

conducted a supplemental search, which turned up 126 pages of records concerning AUSA

Wheeler, the bulk of which OPR turned over. See McCarty Decl., ¶¶ 6–14. Claiming

Exemption 6, however, it withheld two pages in full, concerning misconduct by a prison

employee (OPR000126-127), and it redacted portions of 23 pages (OPR000103–OPR000125),

which consist of four complaints filed by other criminal defendants against AUSA Wheeler. Id.,

¶¶ 15, 18, 19. Plaintiff concedes that Defendant properly withheld OPR000126–127, see Pl.

Cross-Mot. at 19 n.2, but he takes issue with the extent of the redactions in the remaining 23

pages. See Pl. Cross-Mot. at 20–26.

Exemption 6 protects "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.

§ 552(b)(6). "The threshold question for Exemption 6 is whether disclosure of the files would

compromise a substantial, as opposed to de minimis, privacy interest." Jurewicz v. U.S. Dep't of

Agriculture, 891 F. Supp. 2d 147, 156 (D.D.C. 2012) (citation and internal quotation marks

omitted). If a substantial privacy interest exists, it must be weighed against the public's interest

in disclosure. See Smith v. Dep't of Labor, 798 F. Supp. 2d 274, 283 (D.D.C. 2011). The "only

relevant public interest in disclosure to be weighed in this balance is the extent to which

disclosure would serve the core purpose of the FOIA, which is contributing significantly to

public understanding of the operations or activities of the government." U.S. Dep't of Defense

v. FLRA, 510 U.S. 487, 495 (1994) (emphasis in original) (internal quotation marks and brackets

omitted). "The requester has the burden of demonstrating that public interest." Smith, 798 F.

Supp. 2d at 285.

The Court has reviewed the partially redacted 23 pages in camera and it agrees that the

identifying information about complainants should be withheld. Courts have found that

"disclosure of the complainant's identities could subject the individuals involved to unnecessary public attention, harassment, or embarrassment and could stymie the government's efforts to obtain candid information." Edelman v. SEC, 302 F. Supp. 3d 421, 427 (D.D.C. 2018) (citation and internal citation marks omitted). The fact that the subject matter of many of these complaints — *viz*., criminal proceedings — is in the public domain does not make the privacy concern insubstantial. See Wisdom v. U.S. Tr. Program, 232 F. Supp. 3d 97, 124 (D.D.C. 2017) ("[E]ven where such identifying information is otherwise available in public records, individuals may still retain a privacy interest in avoiding the association of their names with complaints or other disciplinary actions."). Here, the government has disclosed the complaints themselves — thus shedding light on Wheeler's activities — but it need not reveal the criminally prosecuted complaints' identities or facts about their cases that could identify them. As a result, the public interest in the redactions does not outweigh privacy concerns, especially when the Court considers the chilling effect this could have on future complainants.

C. EOUSA Records

EOUSA has withheld three documents, totaling just nine pages: a six-page email chain in full (OPR-18) and identifying information from three other pages (OPR-19, OPR-20, and a single page from OPR-24). See Stmt. of Facts, ¶¶ 29, 30; compare Def. MSJ, Attach. 3 (Declaration of David Luczynski), Exh. D (Supplemental Vaughn Index) with Civil Action No. 17-781, ECF No. 20 (Def. MSJ), Attach. 1-F (Vaughn Index); but see ECF No. 281 (Def. Reply) at 7 (identifying the three withheld pages as OPR-19 and OPR-20) (*in camera* review shows that OPR-19 and OPR-20 correspond to Doc 2 on the Vaughn Index, while a single page of OPR-24 corresponds to Doc 3). Defendant has claimed that these redactions are proper under Exemptions 5, 6, and 7(C). See Supplemental Vaughn Index.

The parties surprisingly spend a great deal of ink disputing these pages, see Def MSJ at 10–16; Pl. Cross-Mot. at 14–17; Def. Reply at 7–8, but these efforts are gratuitous. The Court reviewed the documents *in camera* and confirmed them to be the same documents that were the subject of prior litigation. It has already rendered a final decision that certain portions of OPR-19, OPR-20, and OPR-24 are protected by Exemptions 5, 6, and 7(C). See Bartko, 2018 WL 4608239, at *10–11. It left Defendant with only the charge of either showing that portions of those documents were not reasonably segregable or of releasing non-exempt portions. Id. EOUSA thereafter complied, releasing excerpts of the three pages. See Bartko, 2019 WL 2996534, at *3; see Def. MSJ at 15–16. This Court determined that EOUSA had "met its production burden" in regard to these documents and others. See Bartko, 2019 WL 2996534, at *3.

The Court also previously issued a final decision that found the withholding of OPR-18 appropriate. See Bartko, 2018 WL 4608239, at *10–11. Following that decision, the Court reiterated in its September Opinion that "EOUSA had properly withheld one six-page document under Exemption 5" — OPR-18. See Bartko, 2019 WL 2996534, at *3. Yet another look at these decisions is unnecessary. EOUSA thus achieves summary judgment.

## IV. Conclusion

For these reasons, the Court will grant in part and deny in part Defendants' Motion for

Summary Judgment and deny Plaintiff's Motion for Summary Judgment.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  August 2, 2019